GODFREY BURTON ET AL. *v.* CITY OF STAMFORD
(AC 28309)
(AC 29468)

Flynn, C. J., and Gruendel and Peters, Js.

48

Argued March 9—officially released June 9, 2009

*Kenneth B. Povodator*, assistant corporation counsel, with whom, on the brief, was *Thomas M. Cassone*, corporation counsel, for the appellant-appellee (defendant).

*William F. Gallagher*, with whom, on the brief, was *Hugh D. Hughes*, for the appellee-appellant (plaintiff).

*Opinion*

GRUENDEL, J. On the morning of October 11, 2002, two vehicles collided near the intersection of Main Street and Clinton Avenue in Stamford and a civil action followed. Both parties now appeal from the judgment of the trial court setting aside, and subsequently reinstating, a directed verdict. In AC 28309, the defendant, the city of Stamford, claims that the court abused its discretion in (1) permitting the plaintiff Godfrey Burton[1] to amend his complaint after it had directed a verdict in favor of the defendant and (2) granting the plaintiff's motion to set aside the directed verdict. In AC 29468, the plaintiff maintains that the court improperly directed a verdict in favor of the defendant in light of its determination that the evidence was insufficient as a matter of law on the issue of causation. We affirm the judgment of the trial court in AC 28309 and reverse the judgment of the trial court in AC 29468.

The underlying facts are largely undisputed. On October 11, 2002, the plaintiff was driving his wife's vehicle eastbound on Main Street in Stamford. He was headed

[1] Although the writ of summons listed both Godfrey Burton and his wife, Peninah Burton, as plaintiffs, the complaint named only Godfrey Burton as a plaintiff and contained no allegations as to Peninah Burton. Throughout this litigation, the parties have referred to Godfrey Burton as the sole plaintiff. We therefore refer to Godfrey Burton as the plaintiff in this appeal.

to a Jamaican restaurant on Main Street, which is the third store west of the intersection with Clinton Avenue. That morning, Officer James Grabinski of the Stamford police department was operating a vehicle owned by the defendant. At approximately 8:30 a.m., Grabinski responded to a "code two call" on Clinton Avenue.[2] He proceeded westbound on Main Street with the vehicle's lights and siren activated.

As he approached the intersection of Main Street and Clinton Avenue (intersection),[3] Grabinski saw the plaintiff's vehicle at rest and facing east in front of the Jamaican restaurant. Grabinski had a "free and clear unobstructed view and roadway" at that point, and observed no vehicles or pedestrians traveling in either the eastbound or westbound lanes. Grabinski testified that due to wet weather that day, he "started in a slow turn . . . a slow, safe, reasonable turn." At trial, Grabinski was unable to recall precisely where he began his left turn onto Clinton Avenue. He further acknowledged that his vehicle was in the eastbound lane—that is, the oncoming lane—prior to the collision.

The plaintiff had no memory of the collision.[4] Grabinski testified that once he had begun his left turn toward Clinton Avenue, "[s]uddenly, there was a car in front of me, and a collision occurred." He recounted: "I don't recall [the plaintiff's vehicle] being in the travel portion of the roadway until I was in my turn. I was in the

---

[2] During his testimony, Grabinski explained that "[w]hen we go code two—there are two codes, code one and code two. Code one is normal response, no lights, no siren. Code two is lights and siren; there's no in-between when you respond to code two."

[3] The intersection is not controlled by a traffic control signal.

[4] The plaintiff testified that he recalled heading to the Jamaican restaurant on the morning of October 11, 2002, and stated that he did not have a clear recollection of arriving at the restaurant. He next remembered being at Stamford Hospital. Asked whether he could provide "any information at all concerning this accident and how it occurred," the plaintiff answered in the negative.

process of my turn, and then I saw the vehicle as I was scanning across—then, boom. It was like that." Grabinski further stated that he did not see the plaintiff's vehicle until it was right in front of him.

The vehicles collided nearly head on. As the court found: "The photographs admitted into evidence at trial show the vehicles as they came to rest following the collision. Both cars have extensive front end damage. . . . As the cars came to rest on Main Street, their conjoined front ends are somewhat east of the . . . intersection. . . . The bumper of the police car had crumpled the front bumper and left front fender of the [plaintiff's vehicle] back approximately to the point of its left front tire. . . . The plaintiff's [vehicle] is headed approximately straight east on Main Street with all four wheels approximately parallel to the double yellow line and well within the lane designated for eastbound traffic. The police car is positioned at a slight angle to the driver's left, or to the southwest. Its right front tire is several feet south of the double yellow line of Main street, approximately aligned with the left front tire of the [plaintiff's vehicle]; its right rear tire is inches south of the double yellow line. All four tires of the police car are in the eastbound lane of Main Street." (Citations omitted.)

The plaintiff immediately was transferred to Stamford Hospital. Neurologist Joel Feigenson testified that the plaintiff suffered a spinal cord injury between the C-3 and C-6 vertebrae that caused a cervical myelopathy, producing weakness in the plaintiff's arms and legs, and a traumatic brain injury.

A civil action followed. By complaint dated September 23, 2003, the plaintiff alleged that the defendant, pursuant to General Statutes § 7-465,[5] negligently

[5] General Statutes § 7-465 (a) provides in relevant part: "Any town, city or borough, notwithstanding any inconsistent provision of law, general, special or local, shall pay on behalf of any employee of such municipality . . . all sums which such employee becomes obligated to pay by reason of

caused the October 11, 2002 accident, which, in turn, caused the plaintiff to suffer physical injury, pain and anguish. A jury trial commenced in November, 2005. Following the close of the plaintiff's case-in-chief, the defendant, in accordance with Practice Book § 16-37, made an oral motion for a directed verdict predicated on two independent grounds: governmental immunity and evidential insufficiency. On November 22, 2005, the court granted that motion, stating: "The plaintiff [has] not proved a case under § 7-465 because [he] did not sue . . . Grabinski, nor can [he] proceed under General Statutes § 52-557n or any other statute abrogating governmental immunity because [he has] not amended [his] complaint. The motion for a directed verdict [in favor of the defendant] is therefore granted on the ground of governmental immunity."[6] Immediately following that oral ruling, the plaintiff sought to amend his complaint by removing the reference to § 7-465, which request the court denied, stating that "it's simply too late."

The plaintiff thereafter timely moved to set aside the directed verdict pursuant to Practice Book § 16-35, arguing, inter alia, that the court improperly denied his request to amend his complaint. After receiving supplemental briefs and conducting a hearing thereon, the court granted the motion to set aside by memorandum of decision filed November 17, 2006. The court acknowledged its earlier mistake, stating that the "court was in

the liability imposed upon such employee by law for damages awarded . . . for physical damages to person or property, except as set forth in this section, if the employee, at the time of the occurrence, accident, physical injury or damages complained of, was acting in the performance of his duties and within the scope of his employment, and if such occurrence, accident, physical injury or damage was not the result of any wilful or wanton act of such employee in the discharge of such duty. . . . Governmental immunity shall not be a defense in any action brought under this section. . . ."

[6] The court reserved judgment on the defendant's alternate allegation of evidential insufficiency in directing a verdict in its favor.

error in denying the motion [to amend] as made 'too late.' A trial court has wide discretion in granting or denying amendments to pleadings before, during or even after trial." It continued: "The trial . . . did not end with the granting of the motion for a directed verdict, and the [plaintiff's] motion to amend should have been considered on its merits in accordance with the court's discretionary powers." On the motion's merits, the court considered the length of the delay, the fairness to the respective parties and the plaintiff's negligence "in not requesting the amendment prior to the granting of a directed verdict." Exercising its discretion, the court determined that the plaintiff's motion to amend should have been permitted. The court further concluded that because the plaintiff had sufficiently apprised the defendant that he was proceeding under § 52-557n at trial, "the directed verdict must be set aside," and a new trial was ordered. From that judgment, the defendant appealed to this court in AC 28309.

In addition, the defendant filed a series of motions with the trial court.[7] A hearing followed. With the consent of the parties, the court on May 2, 2007, vacated the order for a new trial. The court ordered that it "will decide part one of the defendant's motion for a directed verdict [alleging evidential insufficiency] on the merits. . . . The court will reconsider the issue of whether . . . a new trial should be ordered in connection with its decision on part one of the motion for a directed verdict." On November 27, 2007, the court issued its memorandum of decision. The court concluded that there existed sufficient evidence for the jury reasonably to find that Grabinski was negligent in that he "did not

---

[7] On November 21, 2006, the defendant filed (1) a motion to reargue the granting of the motion to set aside, (2) a supplemental motion for a directed verdict, (3) a motion for permission to file a late motion for a directed verdict and (4) a motion for judgment in accordance with its motion for a directed verdict.

keep a reasonable lookout for traffic in the moments prior to [the] collision" and that "Grabinski failed to take evasive action to avoid a collision despite actual knowledge that a collision was imminent." The court nevertheless concluded that the evidence was insufficient as a matter of law to establish that Grabinski's negligence caused the plaintiff's injuries, relying principally on *Winn* v. *Posades*, 281 Conn. 50, 913 A.2d 407 (2007). As a result, the court once again directed a verdict in favor of the defendant and rendered judgment accordingly. From that judgment, the plaintiff has appealed in AC 29468. On January 5, 2009, the appeals were ordered consolidated.

I

AC 28309

Before considering the defendant's specific claims on appeal, we first address a threshold question of subject matter jurisdiction. "[I]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005). "A determination regarding a trial court's subject matter jurisdiction is a question of law" over which our review is plenary. *Doe* v. *Roe*, 246 Conn. 652, 660, 717 A.2d 706 (1998). In addition, when a decision as to whether a court has subject matter jurisdiction is required, "every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Novak* v. *Levin*, 287 Conn. 71, 79, 951 A.2d 514 (2008).

At issue is whether the defendant's appeal is moot. "Mootness implicates [the] court's subject matter jurisdiction . . . . It is a well-settled general rule that the

existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 492–93, 778 A.2d 33 (2001). Because the court subsequently vacated its order for a new trial, an argument may be made that the defendant's appeal in AC 28309 is moot. That argument ultimately is unavailing.

In *RAL Management, Inc.* v. *Valley View Associates*, 278 Conn. 672, 899 A.2d 586 (2006), our Supreme Court considered the effect of the opening of a judgment on a pending appeal. It explained that "[m]ootness presents a circumstance wherein the issue before the court has been resolved or had lost its significance because of a change in the condition of affairs between the parties. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way." (Internal quotation marks omitted.) Id., 691. The court emphasized that "[a]s [t]he determination of whether a claim has become moot is fact sensitive . . . the facts of each case similarly must dictate the appropriate procedure to follow." (Citation omitted; internal quotation marks omitted.) Id., 692. In evaluating those facts, "the appropriate question is whether the change to the judgment has affected the issue on appeal." Id., 691. The court further furnished a standard by which that inquiry is measured: "If, in opening the judgment, the trial court

reverses itself and resolves the matter at issue on appeal in the appellant's favor, it is clear that the appeal is moot as there is no further practical relief that may be afforded. . . . Conversely, if the judgment is opened to address issues entirely unrelated to the appeal, the opening of the judgment has had no effect on the availability of relief."[8] (Citations omitted.) Id., 691–92.

Applying that standard to the present case, we conclude that it falls within the latter scenario. On December 5, 2006, the defendant appealed from the judgment of the trial court granting the plaintiff's motion to set aside the directed verdict and ordering a new trial. The issues presented in that appeal are whether the court abused its discretion in (1) permitting the plaintiff to amend his complaint and (2) granting the motion to set aside the directed verdict. While that appeal was pending, the court vacated the order for a new trial. On May 2, 2007, the court ordered that it "will decide part one of the defendant's motion for a directed verdict [alleging evidential insufficiency] on the merits. . . . The court will reconsider the issue of whether . . . a new trial should be ordered in connection with its decision on part one of the motion for a directed verdict." The court thereafter concluded that the evidence was insufficient on the issue of causation and again directed a verdict in favor of the defendant. Plainly, then, the court opened the judgment in the present case to address an issue—evidential insufficiency—that is entirely unrelated to the defendant's pending appeal. As a result, under *RAL Management, Inc.* v. *Valley View Associates*, supra, 278 Conn. 692, that development "had no effect on the availability of [appellate] relief."

[8] The court also noted that "[a] more difficult question may be presented if the trial court addresses the matter at issue on appeal, but does not entirely afford the appellant the relief sought. In such cases, the extent to which the trial court alters the judgment may require either a new appeal or an amended appeal." *RAL Management, Inc.* v. *Valley View Associates*, supra, 278 Conn. 692.

We thus conclude that the appeal is not moot and proceed to the merits of the defendant's claims.

A

The defendant contends that the court improperly permitted the plaintiff to amend his complaint after it had directed a verdict in its favor. We disagree and conclude that the court did not abuse its discretion in so doing.

At the outset, we note the defendant's argument that, given the unique procedural history of this case, the court's resolution of the request to amend "is or should be subject to plenary review." Other than a single citation to *Johnson* v. *Atkinson*, 283 Conn. 243, 926 A.2d 656 (2007), which involved application of the law of the case doctrine, the defendant has offered no discussion whatsoever. Containing mere assertion when analysis is required, the argument is deemed abandoned. See *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003). Moreover, the defendant's argument is contrary to well established precedent. As our Supreme Court stated: "Our standard of review . . . is well settled. While our courts have been liberal in permitting amendments . . . this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. This court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the [defendant's]

burden in this case to demonstrate that the trial court clearly abused its discretion." (Internal quotation marks omitted.) *Rizzuto* v. *Davidson Ladders, Inc.*, 280 Conn. 225, 255, 905 A.2d 1165 (2006); *Connecticut National Bank* v. *Voog*, 233 Conn. 352, 364–65, 659 A.2d 172 (1995); *Drew* v. *K-Mart Corp.*, 37 Conn. App. 239, 242, 655 A.2d 806 (1995). With that standard in mind, we turn to the defendant's claim.

For multiple reasons, the defendant maintains that the court abused its discretion in permitting the plaintiff to amend his complaint. They are equally unconvincing.

The defendant first insists that a motion to amend is not permitted after the granting of a directed verdict. It has provided no authority for that proposition. To the contrary, our Supreme Court recently noted that "[u]nder certain circumstances, the trial court may allow an amendment to plead an additional special defense *even after judgment has entered.*" (Emphasis added.) *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, 266 Conn. 572, 584, 833 A.2d 908 (2003), citing *Ideal Financing Assn.* v. *LaBonte*, 120 Conn. 190, 195–96, 180 A. 300 (1935); see also *Kelly* v. *New Haven Steamboat Co.*, 75 Conn. 42, 47, 52 A. 261 (1902) ("[a]n amendment after judgment . . . is a possible, but most extraordinary, remedy"); *McAlister* v. *Clark*, 33 Conn. 253, 257 (1866) (noting that because "the time beyond which an amendment may not be allowed has not been prescribed by . . . statute, it becomes a matter of practice, and must of course rest in the discretion of the court"); *Drew* v. *K-Mart Corp.*, supra, 37 Conn. App. 242 ("[i]t is within the discretion of the trial court to allow an amendment to pleadings at any time").

Although it acknowledges the decision of our Supreme Court in *McAlister*, the defendant characterizes that precedent as an " 'older' " and inapplicable case. To its first point, we remind counsel that it is

not the vintage but the vitality of precedent that is of significance. The defendant has proffered no authority either indicating that *McAlister* presently is not good law in this jurisdiction or questioning the reasoning therein. To its second point, we concur with the *McAlister* court that an amendment after a verdict has entered "may be allowed under special circumstances, but it will not be in ordinary cases" and that such determination "is . . . a matter of discretion . . . ." *McAlister* v. *Clark*, supra, 33 Conn. 257. Like *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, supra, 266 Conn. 584, *Ideal Financing Assn.* v. *LaBonte*, supra, 120 Conn. 195–96, *Kelly* v. *New Haven Steamboat Co.*, supra, 75 Conn. 47, and *Drew* v. *K-Mart Corp.*, supra, 37 Conn. App. 242, *McAlister* stands for the proposition that the court is not prohibited from granting a motion to amend after judgment is rendered. Rather, the court must determine whether the particular circumstances mandate such exercise of its discretion.

The defendant also claims that the plaintiff's failure to present his motion to amend in written form constitutes a defect depriving the court of discretion to consider the motion. Consistent with its previous claim, the defendant provides no relevant authority for that contention.[9] In *Falby* v. *Zarembski*, 221 Conn. 14, 602 A.2d 1 (1992), our Supreme Court reversed the trial court's denial of an oral motion to amend a complaint, concluding that "the court should have permitted the amendment." Id., 21; see also *Carchrae* v. *Carchrae*, 10 Conn. App. 566, 569, 524 A.2d 672 (1987) (holding that court did not abuse discretion in granting plaintiffs' oral motion to amend complaint); *Kredi* v. *Benson*, 1 Conn. App. 511, 513, 473 A.2d 333 (same), cert. denied, 193 Conn. 803, 474 A.2d 1260 (1984); cf. *Rafferty* v. *Noto*

---

[9] Although the defendant cites *Pekera* v. *Purpora*, 273 Conn. 348, 869 A.2d 1210 (2005), in support of its claim, that case is inapposite, as the *Pekera* plaintiffs at no time moved to amend their complaint. Id., 359–60.

*Bros. Construction, LLC*, 68 Conn. App. 685, 689, 795 A.2d 1274 (2002) (holding that court did not abuse discretion in allowing plaintiffs to orally amend prejudgment remedy application). Furthermore, we note that the plaintiff's motion to amend was made pursuant to Practice Book § 10-60 (a) (1), which permits amendment of pleadings "[b]y order of judicial authority . . . ." By its plain language, that provision does not require such a motion to be made in written format or to be filed with the court. Cf. Practice Book § 10-60 (a) (2) (permitting amendment by *written* consent of adverse party); Practice Book § 10-60 (a) (3) (permitting party alternatively to *file* request for leave to file amendment). In light of the foregoing, the defendant's claim that the court cannot consider an oral motion to amend is untenable.

The defendant further argues that on the merits, the motion to amend should not have been granted. The plaintiff's complaint contained the following allegation: "Pursuant to § 7-465 . . . notice was given to the [t]own [c]lerk for the [defendant] on January 13, 2003, of the [plaintiff's intention] to commence this action . . . ." Like § 52-557n,[10] § 7-465 is a statute abrogating governmental immunity.[11] A party "may choose to rely on either [§ 52-557n or § 7-465] as long as they meet the requirements therein." *Spears* v. *Garcia*, 66 Conn. App. 669, 680, 785 A.2d 1181 (2001), aff'd, 263 Conn. 22, 818 A.2d 37 (2003). We have explained the distinction between those statutes as follows: "Section 52-557n allows an action to be brought directly against a municipality for the negligent actions of its agents. Section 7-465 allows an action for indemnification against a

---

[10] General Statutes § 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ."

[11] See footnote 5.

municipality in conjunction with a common-law action against a municipal employee." *Gaudino* v. *East Hartford,* 87 Conn. App. 353, 356, 865 A.2d 470 (2005). The plaintiff sought to remove the reference to § 7-465 in moving to amend his pleading.

In passing on a motion to amend, a court must consider "the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment." (Internal quotation marks omitted.) *Rizzuto* v. *Davidson Ladders, Inc.,* supra, 280 Conn. 255. Applying those factors, the court first concluded that the "plaintiff's counsel were negligent in not requesting the amendment prior to the granting of a directed verdict. . . . The resolution of the amendment issue therefore depends on whether . . . the other relevant factors outweigh that negligence." In considering those other factors, the court found that the requested amendment "would not have caused any substantial delay in the trial," noting that the defendant's counsel opined at argument on the motion that no significant delay was likely. The court further found that "the denial of the amendment caused more unfairness and prejudice to the plaintiff than the granting of the amendment would have caused to the defendant." In this regard, the court noted that "the denial [of the motion to amend] turned a plaintiff claiming serious injuries out of court without a decision on the merits of his claim. Permitting the amendment would have caused the defendant only to have to reframe its request to charge and final arguments to the jury in terms of one statute rather than another. The key liability issues would be the same under either statute: the alleged [common-law] negligence or statutory negligence of . . . Grabinski (admittedly acting within the scope of his duties on behalf of the [defendant]); the alleged contributory negligence of the plaintiff . . . and the cause of the plaintiff's injuries." Concluding

that the amendment would cause no prejudice to the defendant, the court determined that the plaintiff's "oral motion to amend the complaint should have been allowed." On our review of the record and the respective arguments of the parties, we cannot say that the court abused its discretion in permitting the plaintiff to amend his pleading.

B

The defendant also claims that the court abused its discretion in granting the plaintiff's motion to set aside the directed verdict. We disagree.

We begin our analysis of the defendant's claim by noting that "[t]he trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence." (Internal quotation marks omitted.) *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 702, 900 A.2d 498 (2006); see also *Ideal Financing Assn.* v. *LaBonte*, supra, 120 Conn. 195 ("[i]t is a general rule of the law that all judgments are under the control of the court which pronounced them during the term at which they are rendered or entered of record, and they may then be set aside or modified by that court"). "[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached." (Internal quotation marks omitted.) *Arnone* v. *Enfield*, 79 Conn. App. 501, 505–506, 831 A.2d 260, cert. denied, 266 Conn. 932, 837 A.2d 804 (2003). "Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion . . . that, in the absence of clear

abuse, we shall not disturb."[12] (Internal quotation marks omitted.) *Jackson* v. *Water Pollution Control Authority*, supra, 702.

The basis of the defendant's claim of discretionary abuse is twofold. It first suggests that having already directed a verdict in the defendant's favor, the court improperly revisited that determination. That argument misconstrues both the law of the case doctrine and the motion to set aside. The law of the case doctrine simply "expresses the practice of judges generally to refuse to reopen what [already] has been decided . . . ." (Internal quotation marks omitted.) *Johnson* v. *Atkinson*, supra, 283 Conn. 249. At the same time, the doctrine "is not a limitation on [the] power" of a trial court. (Internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 80 Conn. App. 436, 449, 835 A.2d 491 (2003), cert. denied, 268 Conn. 920, 846 A.2d 881 (2004); see also *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 131, 788 A.2d 83 (2002) (court may "vacate, modify, or depart from interlocutory order or ruling of another judge in the same case, upon a question of law" [internal quotation marks omitted]). Understandably, the defendant provides no authority indicating that the trial court is precluded, under the law of the case doctrine, from considering a motion to set aside a directed verdict.[13]

[12] As with the prior claim, the defendant argues that our review is plenary. Its analysis on that point consists of the following statement: "[B]ecause the underlying verdict in this case was a directed verdict, the defendant believes that review in this case effectively is, or should be, plenary, as any review necessarily encompasses both the initial directed verdict and the subsequent decision to set it aside." For the third time in this appeal, the defendant advances an argument without citation to any applicable authority in support thereof. Moreover, this court has held that a claim that the trial court improperly set aside a directed verdict is governed by the abuse of discretion standard. See *Alfano* v. *Randy's Wooster Street Pizza Shop II, Inc.*, 90 Conn. App. 766, 773, 881 A.2d 379 (2005). Accordingly, the defendant's call for plenary review is without merit.

[13] We also note that the transcript reveals that in response to the plaintiff's oral motion to amend, the defendant argued that "after [the court] rules [on the motion for a directed verdict] it's too late to move to amend. . . . [O]nce it's submitted to [the court] for decision . . . that's the end of it."

The defendant's misunderstanding extends to the procedural vehicle known as the motion to set aside a verdict. The purpose of the motion to set aside "is to ensure the fairness of postverdict trial court procedures . . . ." *Santopietro* v. *New Haven*, 239 Conn. 207, 215, 682 A.2d 106 (1996). "The purpose is to protect the litigants, not the trial court." Id., 218. In addition, "moving to set a verdict aside has the desirable effect of affording the trial court an opportunity to reconsider its earlier rulings . . . ." Id. The court's reconsideration of its earlier decision to grant the defendant's motion for a directed verdict was authorized both by statute and our rules of practice. See General Statutes § 52-228b; Practice Book § 16-35.[14]

The second basis of the defendant's claim of discretionary abuse is its reliance on this court's decision in *Gaudino* v. *East Hartford*, supra, 87 Conn. App. 353. Like the present case, the plaintiffs in *Gaudino* "sued the municipality without bringing an action against employees or agents of the municipality" as required by § 7-465. Id., 356. Unlike the present case, the *Gaudino* plaintiffs never sought to amend their complaint to remove the reference to § 7-465. As we stated: "The plaintiffs could have pursued an action against the municipality under either § 7-465 or § 52-557n. They cannot, however, alter the statute under which their claim was based without amending their complaint.

The defendant thus invited the court's erroneous determination that a court is prohibited from granting a motion to amend after a verdict is directed.

[14] General Statutes § 52-228b provides in relevant part: "No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court. . . ."

Practice Book § 16-35 provides in relevant part: "[M]otions to set aside a verdict . . . must be filed with the clerk within ten days after the day the verdict is accepted . . . . The clerk shall notify the trial judge of such filing. Such motions shall state the specific grounds upon which counsel relies."

This they failed to do." Id., 359. Accordingly, we concluded that "[b]ecause the statute abrogating municipal immunity that the plaintiffs pleaded in their action against the municipality also required an action against a municipal employee, summary judgment on the ground of municipal immunity properly was granted." Id., 358.

This case is patently distinguishable from *Gaudino*. Here, the plaintiff moved to amend his complaint to delete the reference to § 7-465. We already have concluded that the court did not abuse its discretion in granting that motion. See part I A. As such, this case is precisely the situation contemplated by *Gaudino* in which a plaintiff cures an otherwise defective pleading by amending the complaint.

Generally, a plaintiff is required to identify specifically any statute on which an action is grounded. Practice Book § 10-3; see also *Avon Meadow Condominium Assn., Inc.* v. *Bank of Boston Connecticut*, 50 Conn. App. 688, 698, 719 A.2d 66, cert. denied, 247 Conn. 946, 723 A.2d 320 (1998). "At the same time, our courts repeatedly have recognized that the rule embodied in Practice Book § 10-3 is directory and not mandatory. . . . As long as the defendant is sufficiently apprised of the nature of the action . . . the failure to comply with the directive of Practice Book § 10-3 (a) will not bar recovery." (Citations omitted; internal quotation marks omitted.) *Ramondetta* v. *Amenta*, 97 Conn. App. 151, 162, 903 A.2d 232 (2006). In the present case, the court found that the plaintiff sufficiently apprised the defendant that he was proceeding under § 52-557n by (1) the plaintiff's "reference to § 52-557n at the outset of the trial when the court inquired as to the nature of the governmental immunity special defense"; (2) the plaintiff's invocation of § 52-557n in its argument in opposition to the defendant's motion for a directed verdict; (3) "the plaintiff's express reliance on § 52-557n

in its November 21, 2005 memorandum of law"; and (4) the plaintiff's written request to charge on § 52-557n at the November 21, 2005 charge conference.[15] Noting Connecticut's policy preference to bring about a trial on the merits whenever possible and to secure for the litigant his or her day in court; see, e.g., *Snow* v. *Calise*, 174 Conn. 567, 574, 392 A.2d 440 (1978); *Egri* v. *Foisie*, 83 Conn. App. 243, 249, 848 A.2d 1266, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004); the court granted the motion to set aside the directed verdict predicated on governmental immunity. We decline to disturb that exercise of discretion.

## II

### AC 29468

In his appeal, the plaintiff maintains that the court improperly directed a verdict in favor of the defendant in light of its determination that the evidence was insufficient as a matter of law on the issue of causation. The parties agree as to the basis of their disagreement— whether this case is controlled by the decision of our Supreme Court in *Winn* v. *Posades*, supra, 281 Conn. 50. We conclude that it is not and, accordingly, reverse the judgment of the trial court.

Directed verdicts are disfavored in this state. See *Boehm* v. *Kish*, 201 Conn. 385, 394, 517 A.2d 624 (1986); *Lockwood* v. *Professional Wheelchair Transportation, Inc.*, 37 Conn. App. 85, 91, 654 A.2d 1252, cert. denied, 233 Conn. 902, 657 A.2d 641 (1995). "Litigants have a constitutional right to have factual issues resolved by the jury." *Mather* v. *Griffin Hospital*, 207 Conn. 125, 138, 540 A.2d 666 (1988). As a result, a trial court is permitted to direct a verdict "only when a jury could not reasonably and legally have reached any other conclusion." (Internal quotation marks omitted.) *Janusauskas* v. *Fichman*, 264 Conn. 796, 803, 826 A.2d 1066

---

[15] The defendant does not dispute those findings on appeal.

(2003). "We review a court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff." (Internal quotation marks omitted.) *McNeff* v. *Vinco, Inc.*, 59 Conn. App. 698, 702, 757 A.2d 685 (2000). "Although it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to mere conjecture and speculation." (Internal quotation marks omitted.) *Coughlin* v. *Anderson*, 270 Conn. 487, 497–98, 853 A.2d 460 (2004). Finally, the issue of "[w]hether the plaintiff has established a prima facie case entitling the plaintiff to submit a claim to a trier of fact is a question of law over which our review is plenary." *DiStefano* v. *Milardo*, 276 Conn. 416, 422, 886 A.2d 415 (2005).

Against that standard, the plaintiff contends that the court should not have directed a verdict because the jury reasonably could have concluded from the evidence presented that Grabinski's negligence caused the plaintiff's injuries. The defendant insists that the present case is controlled by *Winn* v. *Posades*, supra, 281 Conn. 50. The plaintiff counters that subsequent to the court's decision to direct a verdict, our Supreme Court refined that precedent in *Hicks* v. *State*, 287 Conn. 421, 435, 948 A.2d 982 (2008), in such a manner that renders *Winn* distinguishable from the present case.

Before focusing our attention on the precedent of our Supreme Court, we note what is not at issue in this appeal. In directing a verdict in the defendant's favor, the court found that sufficient evidence existed for the jury reasonably to find that Grabinski was negligent in that he failed (1) "[to] keep a reasonable lookout for traffic in the moments prior to the collision" and (2) "to take evasive action to avoid a collision despite actual knowledge that a collision was imminent." Those findings are not contested by the defendant in this appeal. Rather, the defendant posits that even in the face of

those findings, the issue of causation is such that reasonable minds cannot differ. We do not agree.

## A

## Pre-*Winn* Precedent

We start our discussion not with the *Winn* decision, but with the pertinent precedent that preceded it. More than one century ago, a four year old child was struck by a railcar and litigation followed. *Morse* v. *Consolidated Railway Co.*, 81 Conn. 395, 71 A. 553 (1908). In considering the alleged negligence on the part of the defendant railway company, the court observed: "As respected the [child], it was the duty of the defendant's motorman in the operation of its car to conduct himself as a reasonably prudent man would do under the circumstances existing at the time. To determine whether he did so, the jury must have those circumstances before them in the evidence. They could not properly be allowed to guess or surmise how the accident happened. Whether the motorman was guilty of negligence toward the girl depends upon their situation at the time relative to each other. The evidence entirely fails to show what this was." Id., 398. The court continued: "Excessive speed being proved, the cause of the accident would still be a matter of conjecture with the jury. While the cause of the accident could be proved by presumptive evidence and need not be established beyond a reasonable doubt . . . the plaintiff was bound by his evidence to remove the cause from the realm of speculation, and to establish facts affording a logical basis for the inferences which he claimed. . . . To have submitted the case to the jury upon the evidence introduced would have been to permit them to draw, from conjectural and not from proven facts, the inference that the defendant's negligence was the cause of the [child's] injuries. This could not properly be done . . . ." (Citations omitted.) Id., 399.

The court reached a similar conclusion in *Wallace* v. *Waterhouse*, 86 Conn. 546, 86 A. 10 (1913), in which the plaintiffs rested their case-in-chief after offering evidence tending to show that the defendant ran over and killed the plaintiffs' dog while operating an automobile on a highway at a high rate of speed. The court stated: "[T]he jury was left uninformed upon other details which might have been significant, especially in view of the habits and characteristics of dogs as commonly known. It would be easy to surmise a variety of things entering, as acts of causation, into the injury to the dog, which might have occurred in addition to these determinable factors and consistent with them. Such additional factors in the situation might point to a lack of care on the part of the driver of the automobile. They easily might, on the other hand, demonstrate that he was free from blame, and that the dog was responsible for his own death. No light was thrown upon these matters of possible controlling importance, and the jury was left to conjecture as to what occurred and what the real proximate cause of the killing of the animal was. The improper speed of the automobile may have concurred in point of time with the dog's injury without being the cause of it." Id., 547–48.

Possible negligence stemming from operation of a vehicle at an excessive rate of speed was at issue in *Palmieri* v. *Macero*, 146 Conn. 705, 155 A.2d 750 (1959). In that case, the plaintiff was injured when a vehicle driven by his nephew "went over an embankment on the Pennsylvania turnpike," an accident the nephew did not survive. Id., 706. As the plaintiff was asleep at the time, "[t]here were no witnesses to the accident." Id. Following a trial, the court granted the defendant's motion for judgment notwithstanding the verdict. On appeal, the Supreme Court affirmed that decision. In so doing, the court emphasized that the plaintiff had failed to remove the issue of causation from the realm

of conjecture: "Though it might be reasonable to assume, as the plaintiff maintains, that the nephew fell asleep at the wheel and thus lost control of the car, it is just as reasonable to suppose that any one of a number of other possibilities was the motivating factor for the erratic course which the car pursued. The operator might have been confronted by a sudden emergency not caused by his own negligence . . . or he could have blacked out from an attack of sudden illness. Indeed, he could even have been dead at the wheel when the car made the first marks upon the shoulder of the road. Inferences to be drawn from the facts proved must be reasonable and logical, and the conclusions based on them must not be the result of speculation and conjecture. . . . The conclusion of the jury that negligence of the nephew was established was without evidential basis and could only have resulted from guesswork. . . . . The existence of so many possibilities as to the proximate cause of this accident, together with the lack of facts pointing significantly to any one of them as due to the negligence of the nephew, renders the question of his negligence too conjectural and uncertain to warrant a verdict against the defendant." (Citations omitted.) Id., 707–708. The court reached an identical conclusion on similar facts in *Chasse* v. *Albert*, 147 Conn. 680, 683, 166 A.2d 148 (1960).

Next came *Terminal Taxi Co.* v. *Flynn*, 156 Conn. 313, 240 A.2d 881 (1968), in which the court ultimately determined that sufficient evidence existed to remove the issue of proximate cause from the realm of conjecture. In *Terminal Taxi Co.*, the vehicle of the plaintiff taxicab driver[16] was "forcibly struck at the left rear by the right front of an automobile owned and operated

---

[16] In *Terminal Taxi Co.* v. *Flynn*, supra, 156 Conn. 314, the plaintiffs were the named company and Joseph Natale, the taxicab driver who sustained injuries in the automobile accident. For convenience, we refer to Natale as the plaintiff.

by the defendant's decedent." Id., 315. Unlike in *Morse, Wallace, Palmieri* and *Chasse,* an eyewitness to the accident testified. Id., 316. That witness was the plaintiff who had been involved in the automobile accident. Significantly, the court noted that "[the plaintiff] did not testify that the [decedent's] vehicle was being driven at a high rate of speed before the accident or that [the decedent] was not looking where he was going or that [the decedent] lost control of his car. The evidence as to these facts was circumstantial." Id. Rather, the plaintiff "testified about what he saw . . . ." Id., 317. In addition, "evidence of physical facts was introduced through the investigating officer." Id. Because there "was no direct evidence to show the manner in which [the decedent] was operating his vehicle before the impact," the defendant argued that the jury was "required to speculate and guess as to what might have caused the [decedent's] car to collide with the taxicab." Id., 316.

The Supreme Court was not persuaded by that argument. Acknowledging that the plaintiff was "required to remove the issues of negligence and proximate cause from the field of conjecture and speculation," the court nevertheless indicated that "[a] plaintiff, however, may sustain his burden of proof by circumstantial evidence. A jury must often rely on circumstantial evidence and draw inferences from it." Id. The court set forth the two scenarios with which a jury may be presented in a given case: "If the evidence in a case presents such a situation that the minds of fair and reasonable men could therefrom reach but one conclusion, there is no question for a jury. The case should be decided by the judge as essentially a question of law, and he may direct a verdict. . . . But if the evidence is such that honest and reasonable men could fairly differ and reach different conclusions, the issues should go to the jury for determination." (Citation omitted.) Id., 316–17. The

defendant, "in an attempt to bring the case within obser-vations of a similar nature made in the *Chasse* and *Palmieri* cases," suggested that the decedent "might have been confronted with a sudden emergency or sud-den illness." Id., 317. The court differentiated *Chasse* and *Palmieri* from the case at hand, noting that they contained "no information as to how the accident occurred, and there were no eyewitnesses. Thus, in those cases, many possible explanations, on which the jury could only speculate, presented themselves. In the present case, in contrast, there is little doubt about the manner in which the accident occurred. The facts were adequate to warrant the jury in drawing the inference that [the decedent] was the responsible agent in causing his car to take the course it did. The jury could have found from the nature and the extent of the damage to the vehicles that [the decedent] was operating his car at an excessive speed and that he was not driving at a reasonable distance apart from the taxicab." Id., 317–18. In response to hypothetical causes of the accident prof-fered by the defendant, the court stated: "It was not necessary that the plaintiffs' proof of negligence negate all possible circumstances which would excuse the defendant. . . . Nor was it necessary that the proof rise to that degree of certainty which excludes every reasonable conclusion other than that reached by the jury. . . . There was sufficient evidence on which the jury could find that [the decedent] was negligent in one or more ways alleged in the amended complaint and that his negligence was the proximate cause of the collision with the taxicab." (Citations omitted.) Id., 318.

The court again visited that issue three years later in *Toomey* v. *Danaher*, 161 Conn. 204, 286 A.2d 293 (1971). In that case, the plaintiff sought to recover dam-ages from the defendant estate of his deceased wife. The plaintiff and his wife were involved in a one car

accident in which their vehicle struck a guardrail, splitting the vehicle in two and tossing them therefrom. Id., 206. The plaintiff had no recollection of the accident due to retrograde amnesia, and his wife died of injuries sustained in the accident without regaining consciousness. Id., 207. As a result, unlike in *Terminal Taxi Co.*, "[t]here were no eyewitnesses to the accident." Id. Thus, "[n]egligence . . . if any, can only be demonstrated by circumstantial evidence." Id. At trial, the plaintiff maintained that the evidence presented, which included a 400 foot skid mark, demonstrated "that the vehicle was traveling at an excessive rate of speed." Id., 208. In rejecting the plaintiff's claim, the court concluded that expert testimony was required to establish negligence on the part of the defendant's decedent: "We believe that the extent of damage to this type of vehicle, at a high rate of speed, on collision with a metal guardrail, does require expert testimony before a jury reasonably may conclude that the vehicle was traveling in excess of that speed. On the evidence, therefore, the jury could not have concluded that excessive speed was the cause of this unfortunate accident, or if the jury did find excessive speed, it was unwarranted by the evidence presented." Id., 210. It continued: "A conclusion of common-law negligence on the facts of this case could have only resulted from conjecture or guess." Id., 212. The court thus held that "[o]n the evidence, as printed in the appendices to the briefs, the jury could not have found negligence on the part of the defendant."[17] Id., 214. *Toomey*, together with *Morse, Wallace, Palmieri, Chasse* and *Terminal Taxi Co.*, forms the backdrop against which came *Winn*.

---

[17] We note that subsequent to its determination that the evidence was insufficient to establish operation of a motor vehicle at an excessive rate of speed on the part of the decedent, the *Toomey* court proceeded to a brief discussion of causation. *Toomey* v. *Danaher*, supra, 161 Conn. 210–11. In that dictum, the court stated that "with no eyewitnesses, we cannot rule out a sudden emergency [as a possible cause of the accident]." Id., 211.

## B

### *Winn*

As the evening neared midnight on September 4, 1997, and his work shift approached, the defendant police officer realized that he had left his handcuff keys at home. Racing out in his police cruiser, he entered an intersection in Plainville "at a speed of fifty-eight to seventy-five miles per hour in a twenty-five mile per hour zone." (Internal quotation marks omitted.) *Winn* v. *Posades*, 91 Conn. App. 610, 612, 881 A.2d 524 (2005), aff'd, 281 Conn. 50, 913 A.2d 407 (2007). At that moment, the plaintiff's decedent, "who was traveling . . . at a speed of thirty-seven to forty-six miles per hour in a thirty-five mile per hour zone, proceeded into the intersection directly in the path of [the defendant officer's] vehicle. [The defendant officer's] vehicle struck the vehicle being driven by the . . . decedent, causing the decedent's vehicle to flip before it settled off the road. There were no skid marks in the area. The impact injured [the defendant officer] and fatally injured the . . . decedent . . . . The . . . decedent never regained consciousness to explain what had happened before his death. [The defendant officer], the sole [surviving] eyewitness to the accident, testified that he recalled nothing of the accident or how it had occurred." Id. A civil trial followed, at which the court rendered judgment of dismissal following the close of the plaintiff's case-in-chief. On appeal, this court affirmed that judgment, concluding that "the plaintiff presented no evidence as to how the accident actually had happened. Even if the plaintiff's evidence tended to show that [the defendant officer] was negligent or reckless in driving his police cruiser through the intersection at a speed of fifty-eight to seventy-five miles per hour in a twenty-five mile per hour zone, there was no evidence that that conduct proximately caused the collision." Id., 618.

On appeal to the Supreme Court, the plaintiff claimed that this court "improperly concluded that the plaintiff had failed to present sufficient evidence of proximate cause as an element of her negligence and recklessness claims." *Winn* v. *Posades*, supra, 281 Conn. 51. The court began its analysis with "a brief review of the law of negligence"[18] and the observation that "in a case involving an automobile accident, [a] plaintiff cannot merely prove that a collision occurred and then call upon the defendant operator to come forward with evidence that the collision was not a proximate consequence of negligence on his part. Nor is it sufficient for a plaintiff to prove that a defendant operator might have been negligent in a manner which would, or might have been, a proximate cause of the collision. A plaintiff must remove the issues of negligence and proximate cause from the field of conjecture and speculation." (Internal quotation marks omitted.) Id., 56–57. The court then discussed its decisions in *Wallace* v. *Waterhouse*, supra, 86 Conn. 546, and *Palmieri* v. *Macero*, supra, 146 Conn. 705, comparing favorably the case before it to that precedent. The court stated: "Similar to *Wallace* and *Palmieri*, the evidence presented by the

---

[18] As every law student learns, "[e]ssential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury. . . . To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct legally caused the injuries. . . . The first component of legal cause is causation in fact. Causation in fact is the purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct. . . . The second component of legal cause is proximate cause. . . . [T]he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. . . . Further, it is the plaintiff who bears the burden to prove an unbroken sequence of events that tied his injuries to the [defendants' conduct]. . . . The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection. . . . This causal connection must be based upon more than conjecture and surmise." (Citation omitted; internal quotation marks omitted.) *Winn* v. *Posades*, supra, 281 Conn. 56–57.

plaintiff in the present case failed to establish that [the defendant officer's] conduct in operating his vehicle at a high rate of speed was the legal cause of the decedent's injuries. It is well established that in order to demonstrate that the defendant's conduct legally caused the decedent's injuries, the plaintiff must prove both causation in fact and proximate cause. . . . In the present case, the Appellate Court properly concluded that the plaintiff had presented insufficient evidence of the actual cause, or cause in fact, of the collision. Although the plaintiff's evidence showed that [the defendant officer] had been negligent or reckless in operating his police cruiser through the intersection at a highly excessive rate of speed, there was no evidence that his speed actually had caused the collision." (Citation omitted.) Id., 59–60.

As it did in *Wallace* v. *Waterhouse*, supra, 86 Conn. 547, and *Palmieri* v. *Macero*, supra, 146 Conn. 707–708, the court noted alternative "factual possibilities that could explain how the accident occurred. The decedent may have run a red light, improperly entering the intersection. Alternatively, the traffic light may have malfunctioned, permitting both [the defendant officer] and the . . . decedent to enter the intersection simultaneously." *Winn* v. *Posades*, supra, 281 Conn. 60. The court further distinguished the case before it from *Terminal Taxi Co.*, noting that the evidence presented at trial in *Terminal Taxi Co.* included the testimony of an eyewitness, as well as physical evidence, which together constituted "sufficient evidence to establish the actual and proximate cause of the accident . . . ." Id., 62.

In affirming the judgment of this court, the Supreme Court emphasized that "[e]ven with the existence of evidence of unreasonable speed, [a] plaintiff nevertheless must demonstrate that the unreasonable speed was the proximate cause of the accident." Id., 63. Reiterating

that familiar precept, *Winn* concluded with the following admonition: "Nothing in our ruling today suggests that the operator of a motor vehicle, including a police officer, who travels at an excessive speed will not be liable in damages for negligence or recklessness. Our conclusion today is simply that we decline to vary from our previous case law that consistently has concluded that proof of excessive speed by the operator of a motor vehicle is insufficient, standing alone, to establish legal cause." Id., 63–64.

## C

### Subsequent Precedent

On November 27, 2007, the trial court directed a verdict in favor of the defendant. In concluding that the evidence presented by the plaintiff was insufficient as a matter of law to establish that Grabinski's negligence caused the plaintiff's injuries, the court expressly relied on *Winn*. Months later, the Supreme Court revisited that decision.

In *Hicks* v. *State*, supra, 287 Conn. 421, the court again was presented with a claim that there existed insufficient evidence regarding the cause of an automobile accident. The plaintiff's negligence action alleged that as he drove his truck around a curve on Route 94 in Glastonbury, he encountered a large orange dump truck belonging to the defendant department of transportation in his lane of travel. The plaintiff further alleged that after swerving to avoid striking the defendant's truck, his vehicle flipped over, causing his numerous physical injuries. Id., 426.

At trial, the plaintiff introduced the testimony of an eyewitness to the accident.[19] That witness indicated that she had been driving behind the plaintiff and described

---

[19] As in the present case, the plaintiff in *Hicks* testified that he was unable to recall the accident. *Hicks* v. *State*, supra, 287 Conn. 427.

the accident that she observed. She opined that "had the plaintiff not been in front of her, she could have been involved in the same accident." Id., 427. The plaintiff also introduced the testimony of an accident reconstruction expert and the three employees of the defendant who were performing a mowing operation at the scene at the time of the accident. At the close of the plaintiff's case, the defendant moved for a directed verdict, which the court denied. A jury subsequently found in favor of the plaintiff, and the defendant filed a motion to set aside the verdict, which the court also denied. From that judgment, the defendant appealed.

On appeal to the Supreme Court, the defendant claimed, inter alia, that the trial court should have set aside the verdict "because the plaintiff failed to prove that negligent 'operation' of a state vehicle had caused the accident . . . ." Id., 430. In so doing, the defendant relied on "a line of cases in which [our Supreme Court] concluded that the plaintiff could not prevail in the absence of 'evidence that [the alleged negligent act] actually had caused the collision . . . [when there] are a number of factual possibilities that could explain how the accident occurred.' *Winn* v. *Posades*, [supra, 281 Conn. 50]." *Hicks* v. *State*, supra, 287 Conn. 437. The Supreme Court deemed that reliance mistaken. Id. As it explained: "The defendant posits that, because the plaintiff stated that he had no recollection of what caused him to swerve his truck, the same possibilities exist in the present case. The paramount difference between the cases cited by the defendant and the one presently before us, however, is that the plaintiff in the present case proffered an eyewitness to the accident. Compare [*Winn* v. *Posades*, supra] 56 (no proof of negligence in two car collision at intersection when '[the defendant] was unable to recall how the accident happened, the [plaintiff's] decedent never regained consciousness, and there were no witnesses to the

accident'); *Toomey* v. *Danaher,* [supra, 161 Conn. 207] (no proof of negligence when driver had died as result of injuries sustained in accident, plaintiff passenger was unable to recall anything about accident due to amnesia, and no eyewitnesses to accident); *Palmieri* v. *Macero,* [supra, 146 Conn. 706–708] (no proof of negligence when driver of motor vehicle that went over embankment did not survive accident, plaintiff passenger was asleep at time of accident, and no other witnesses to accident) with *Terminal Taxi Co.* v. *Flynn,* [supra, 156 Conn. 317–18] (sufficient evidence of negligence when plaintiff was struck from behind by defendant's car and plaintiff proffered testimony as to what he had seen immediately before accident occurred and evidence as to physical facts in police officer's accident report)." *Hicks* v. *State,* supra, 437–38.

In distinguishing the case from the *Winn* line of cases, the *Hicks* court echoed *Terminal Taxi Co.* in instructing that the burden in a negligence action does not require a plaintiff to negate all other possible causes of the accident. Id., 438; accord *Terminal Taxi Co.* v. *Flynn,* supra, 156 Conn. 318. The court stated: "Under the defendant's view, the plaintiff could not prevail even if [the plaintiff's eyewitness] had made her observations as a passenger seated next to the plaintiff, but this court never has taken such a restrictive view of proximate cause. The standard is not that the plaintiff must remove from the realm of possibility all other potential causes of the accident; rather, it is that the plaintiff must establish that it is more likely than not that the cause on which the plaintiff relies was in fact a proximate cause of the accident. . . . [The eyewitness] testimony was competent evidence that the unexpected presence of the department truck moving slowing in the westbound travel lane more likely than not caused the plaintiff to swerve his truck to avoid a collision." (Citation omitted.) *Hicks* v. *State,* supra, 287 Conn. 438. The court

thus affirmed the judgment of the trial court denying the defendant's motion to set aside the verdict. Id.

This court confronted a similar appeal more than three months after *Hicks* was decided.[20] *Schweiger* v. *Amica Mutual Ins. Co.*, 110 Conn. App. 736, 955 A.2d 1241, cert. denied, 289 Conn. 955, 961 A.2d 421 (2008), involved a rear-end collision in Avon. At trial, the plaintiff testified that while stopped behind a line of traffic on Route 44, her vehicle "was struck in the rear by a car operated by the alleged tortfeasor, Brianna-Marie Blodgett. The plaintiff described the impact as a hard jolt. She further testified that she did not observe the car that struck her, either before or after the accident. The plaintiff also testified that she did not speak with Blodgett after the accident." Id., 738. The only evidence presented by the plaintiff in addition to that testimony was a collection of photographs of the damage to her vehicle. Id.

Following a brief discussion of *Winn* v. *Posades*, supra, 281 Conn. 50, the court concluded that the plaintiff "similarly failed to present sufficient evidence regarding negligence and proximate cause to remove the issues from the field of speculation or conjecture." *Schweiger* v. *Amica Mutual Ins. Co.*, supra, 110 Conn. App. 741. The court emphasized that the plaintiff "introduced no evidence beyond the fact that her vehicle was struck by Blodgett's vehicle, perhaps with some force. The fact that there was a collision by itself is insufficient to establish legal cause. . . . No one testified as to the actual circumstances that caused Blodgett's vehicle to strike the plaintiff's vehicle, and the plaintiff testified that she did not see Blodgett's vehicle strike her vehicle. There remains a number of factual possibilities that could explain how the accident occurred." (Citation

---

[20] The court in *Schweiger* v. *Amica Mutual Ins. Co.*, 110 Conn. App. 736, 955 A.2d 1241, cert. denied, 289 Conn. 955, 961 A.2d 421 (2008), neither acknowledged nor discussed the *Hicks* precedent.

omitted.) Id., 741–42. The court stated that "[i]n the present case, there is even less evidence than the amount deemed insufficient in *Winn*." Id., 742–43. Therefore, the court concluded that the trial court properly directed a verdict in favor of the defendant.

## D

### The Present Case

From the aforementioned cases, we glean a common refrain. The teaching of our precedent is that absent an evidentiary basis for a finding of a negligent act that more likely than not caused a plaintiff's injuries, the question of a defendant's negligence is too conjectural and uncertain to warrant submission to a jury. Thus, the critical inquiry in the present case is whether the plaintiff provided such an evidentiary basis.

We first address the question of whether the plaintiff proffered an evidentiary basis for a finding of negligence on the part of Grabinski. The question requires little discussion, as the trial court found that sufficient evidence existed for the jury reasonably to find that Grabinski was negligent in that he failed (1) "[to] keep a reasonable lookout for traffic in the moments prior to [the] collision" and (2) "to take evasive action to avoid a collision despite actual knowledge that a collision was imminent." The defendant does not dispute those findings on appeal.

More substantial is the question of whether the plaintiff proffered a sufficient evidentiary basis for a finding that Grabinski's negligence more likely than not caused the plaintiff's injuries. In considering that question, we find significant the fact that the plaintiff provided an eyewitness to the collision. Whereas in *Winn* the defendant police officer testified that he recalled nothing of the accident; *Winn* v. *Posades*, supra, 281 Conn. 52; Grabinski testified as to his recollections. He testified

that he initially saw the plaintiff's vehicle at rest in front of the Jamaican restaurant and acknowledged that at the time of the collision, the plaintiff was operating his vehicle in the eastbound lane. The court similarly found in its memorandum of decision that "the front of [the plaintiff's vehicle] had gone through the [intersection] proceeding straight on Main Street in an easterly direction," a finding with which the defendant does not quarrel. Grabinski also testified that he had a "free and clear unobstructed view and roadway" just prior to the collision. Despite that clear view of the roadway, Grabinski testified, he did not see the plaintiff's vehicle until it was "right in front of him." Grabinski further testified that at the time of the collision, he was in the plaintiff's lane and could not recall precisely where he had entered that opposing lane. Also, after acknowledging that he had seen the plaintiff's oncoming vehicle and in response to the question of whether he attempted to avoid the vehicle, Grabinski testified that "[t]here was no reason for me to avoid it."

In addition to Grabinski's eyewitness testimony, twenty-four photographs of the accident scene were introduced into evidence. That evidence amply supports the court's findings that the vehicles "collided approximately head-on," that the plaintiff's vehicle was "headed approximately straight east on Main Street with all four wheels approximately parallel to the double yellow line and well within the lane designated for eastbound traffic" and that "[a]ll four tires of the police car [were] in the eastbound lane of Main Street."[21] From those photographs, the jury reasonably could conclude that Grabinski's vehicle had not yet entered the intersection when it collided with the plaintiff's vehicle.[22]

---

[21] At the risk of redundancy, we again note that the defendant has not challenged any of the court's findings on appeal.

[22] The photographic evidence supports the court's finding that "the cars came to rest on Main Street . . . somewhat east of the . . . intersection."

The jury also heard testimony from officers Peter Trapani and John O'Meara of the Stamford police department. Trapani, who conducted a motor vehicle accident reconstruction, testified that Grabinski's vehicle was "on the opposite side of the street." O'Meara was the first officer to arrive at the scene of the accident. O'Meara testified that Grabinski's vehicle was "on the eastbound side of the traveled portion of Main Street." In light of such evidence, the court, in its memorandum of decision, found that sufficient evidence existed for the jury to find that Grabinski operated his vehicle "on the wrong side of [the street]" prior to the collision with the plaintiff's vehicle.[23] In addition, O'Meara testified that he spoke with Grabinski about the collision. Although he could not recall the specifics of that conversation, O'Meara testified that he had "it in the [police accident] report, more or less." That accident report was introduced into evidence.[24] In the accident report, O'Meara noted: "Grabinski stated that he was traveling westbound on Main Street. Upon approaching [the

[23] Despite that evidentiary basis, the court noted that Grabinski was immune from statutory liability on the basis of his vehicle's presence in the opposing lane, stating: "Were it not for the fact that the officer was driving an emergency vehicle, there was a reasonable basis for a finding that the officer had violated General Statutes § 14-230. But, as [General Statutes § 14-283 is] a statute governing direction of movement, there is an immunity from criminal liability in § 14-283 (b) for operators of emergency vehicles who might otherwise be violating § 14-230. Since there is no safety precaution requirement in subsection (b) of § 14-283 corresponding to the § 14-230 immunity, that immunity is unqualified." The plaintiff does not challenge that determination. The fact that Grabinski was immune from prosecution under § 14-230 does not foreclose the jury from considering the fact that his vehicle was in the plaintiff's lane prior to the collision in evaluating whether Grabinski failed to maintain a proper lookout or to take evasive action to avoid the collision.

[24] As the *Hicks* court emphasized, there was sufficient evidence of negligence in *Terminal Taxi Co.* in light of the plaintiff's "testimony as to what he had seen immediately before the accident occurred and evidence as to physical facts in [the] police officer's accident report . . . ." *Hicks* v. *State*, supra, 287 Conn. 438. Similar evidence was before the jury in the present case.

intersection] he observed [the plaintiff's vehicle] travel-ing eastbound on Main Street. Grabinski stated that he was attempting to turn onto Clinton Avenue from Main Street also at this time but was unable to do so due to [the plaintiff's vehicle] failing to yield as it proceeded eastbound on Main Street at Clinton Avenue." In addi-tion, the accident report contained evidence as to physi-cal facts, including a diagram prepared by Trapani and drawn to scale, which indicated that Grabinski's vehicle fully was in the opposite lane of traffic and had not yet entered the intersection when it collided with the plaintiff's vehicle.

Given that evidence, the case most closely resembles *Terminal Taxi Co.* v. *Flynn*, supra, 156 Conn. 313. As in that case, the plaintiff has provided eyewitness testi-mony about the accident. That factor is most relevant to our analysis. As the Supreme Court recently observed, "[t]he paramount difference between [*Winn, Toomey* and *Palmieri*] and the one presently before us, how-ever, is that the plaintiff . . . proffered an eyewitness to the accident." *Hicks* v. *State*, supra, 287 Conn. 437; see also 4 F. Harper, F. James & O. Gray, Torts (3d Ed. 2007) § 20.2, p. 103 n.9 ("where there are eyewitnesses to an accident, their testimony will generally suffice to establish defendant's . . . causation of plaintiff's injur-ies"). The defendant attempts to minimize that crucial detail by arguing that because Grabinski could not tes-tify as to the plaintiff's operation of his vehicle, Grabin-ski was not truly an eyewitness to the collision.[25] Besides a semantical exercise, the argument is undercut by Supreme Court precedent. Like Grabinski, the eye-witness in *Terminal Taxi Co.* did not testify as to the manner in which the other driver operated his vehicle

---

[25] Read in a particular light, the court appears to make a similar intimation in its memorandum of decision, stating that in the present case "[t]here was no eyewitness testimony (other than Grabinski's)."

but simply testified "about what he saw . . . ." *Terminal Taxi Co.* v. *Flynn,* supra, 317. As the court conceded, "[i]t is true that there was no direct evidence to show the manner in which [the decedent] was operating his vehicle before the impact." Id., 316. The court nevertheless concluded that the plaintiff in that case sustained his burden of proof by circumstantial evidence. Id., 316–18. By contrast, here, Grabinski testified that just prior to the collision, the plaintiff was operating his vehicle in the eastbound lane.

In concluding that the evidence was insufficient as a matter of law as to causation, the trial court speculated as to other possible causes of the collision. For example, the court posited that the plaintiff's vehicle could have suffered a mechanical malfunction, that its windshield wipers were inoperable or even that a purchase from the Jamaican restaurant may have slipped off of the seat, distracting the plaintiff. The jury was presented with no evidence of such events. In addition, noting that there was evidence that the left front tire of the plaintiff's vehicle "was flat after the collision," the court questioned whether a tire blowout had transpired. The invocation of such alternatives implicates a central precept articulated in *Hicks* and *Terminal Taxi Co.* regarding the proper evidentiary burden to be placed on a plaintiff in such cases. We repeat that "[t]he standard is not that the plaintiff must remove from the realm of possibility all other potential causes of the accident; rather, it is that the plaintiff must establish that it is more likely than not that the cause on which the plaintiff relies was in fact a proximate cause of the accident." *Hicks* v. *State,* supra, 287 Conn. 438; see also *Terminal Taxi Co.* v. *Flynn,* supra, 156 Conn. 318 (plaintiff's proof need not "negate all possible circumstances which would excuse the defendant" or "rise to that degree of certainty which excludes every reasonable conclusion other than that reached by the jury"). As the Supreme

Court has explained, "[i]t may be conceded that the plaintiff's evidence did not exclude the [alternate causation] hypothesis . . . . But she was not required to prove beyond a reasonable doubt that the defendant [was the cause]. This being a civil case, it was enough if the evidence induced in the minds of the jurors a reasonable belief that the fact was so. . . . The purpose of the circumstantial evidence was to show that it was more probable that the defendant [was the cause], and to satisfy the jury in view of all the testimony that the defendant probably did it. If it was sufficient for this purpose it was enough." (Citation omitted.) *Bradbury* v. *South Norwalk*, 80 Conn. 298, 301–302, 68 A. 321 (1907); see also *Engengro* v. *New Haven Gas Co.*, 152 Conn. 513, 517, 209 A.2d 174 (1965) ("[w]e do not require that the plaintiff's evidence exclude every other hypothesis but her own"); W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 41, p. 269. Although it is conceivable that the plaintiff's vehicle suffered a tire blowout in the moments prior to the collision, the evidence suggests that it is more likely that the flat tire was a casualty of a head-on automobile collision. Indeed, the court's findings that (1) the plaintiff's vehicle "had gone through the . . . intersection proceeding straight on Main Street" just prior to the collision, (2) the plaintiff's vehicle came to rest "parallel to the double yellow line and well within [its] lane" following the collision and (3) "[t]he bumper of the police car had crumpled the front bumper and left front fender of the [plaintiff's vehicle] back approximately to the point of its left front tire" tend to undermine that hypothetical.

Grabinski's eyewitness testimony, the testimony of Trapani and O'Meara, the police accident report and the photographic evidence regarding the vehicles immediately after the collision together was competent evidence from which the jury could reasonably infer that Grabinski failed to maintain a proper lookout and that

Grabinski failed to take evasive action to avoid a collision despite actual knowledge that a collision was imminent. Moreover, on that evidence, the jury reasonably could conclude that Grabinski's negligence more likely than not caused the collision and, by extension, the plaintiff's injuries. The evidence presented "is such that honest and reasonable [minds] could fairly differ and reach different conclusions," and, thus, "the issues should go to the jury for determination." *Terminal Taxi Co.* v. *Flynn*, supra, 156 Conn. 317. Because a sufficient evidential basis was established, it cannot be said that Grabinski's negligence "could only have resulted from guesswork," as was the case in *Palmieri* v. *Macero*, supra, 146 Conn. 708.

"It must always be borne in mind that litigants have a constitutional right to have issues of fact decided by the jury and not by the court." *Ardoline* v. *Keegan*, 140 Conn. 552, 555, 102 A.2d 352 (1954); see also *Mather* v. *Griffin Hospital*, supra, 207 Conn. 138; *Robinson* v. *Backes*, 91 Conn. 457, 460, 99 A. 1057 (1917). "[T]he issue of causation in a negligence action is a question of fact for the trier . . . ." *D'Arcy* v. *Shugrue*, 5 Conn. App. 12, 15, 496 A.2d 967, cert. denied, 197 Conn. 817, 500 A.2d 1336 (1985); see also *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 611, 662 A.2d 753 (1995) ("causation is essentially a factual issue"); *Fox* v. *Mason*, 189 Conn. 484, 489, 456 A.2d 1196 (1983) ("[c]onclusions of proximate cause are to be drawn by the jury and not by the court"); *Marley* v. *New England Transportation Co.*, 133 Conn. 586, 591, 53 A.2d 296 (1947) ("if there is room for a reasonable disagreement the question [of negligence] is one to be determined by the trier as matter of fact"); 2 Restatement (Second), Torts § 434 (2) (1965) ("[i]t is the function of the jury to determine, in any case in which it may reasonably differ on the issue, (a) whether the defendant's conduct has been a substantial factor in causing the harm to

the plaintiff"). On the evidence presented in this case, a factual dispute exists as to whether Grabinski's failure to maintain a proper lookout and to take evasive action caused the plaintiff's injuries. We therefore conclude that the court improperly directed a verdict.

## III

A final matter remains. In his appellate brief, the plaintiff states: "In the event that the plaintiff prevails on this appeal, the plaintiff requests the court to note which allegations of negligence in the complaint survived the trial court's decision."[26] He continues: "The . . . court never addressed the specifications of negligence—other than failure to maintain a proper lookout—that escaped the immunity of [General Statutes] § 14-283 because they did not allege negligence per se. Although the plaintiff does not contest the trial court's judgment as to negligence per se in violation of the motor vehicle statutes, some of those factual allegations, e.g., as to operating a vehicle to the left of the double yellow line and failure to take evasive action, survive within subsections (a), (g) and (h) [of § 14-283], and make no reference to negligence per se." The plaintiff thus claims that in light of the court's alleged failure to rule thereon, those factual allegations remain part of the case.

Despite that ambiguity in the court's decision, the plaintiff has not sought articulation, pursuant to Practice Book § 66-5, of the trial court's memorandum of decision. "It is a well established principle of appellate procedure that the appellant has the duty of providing this court with a record adequate to afford review. . . . Where the factual or legal basis of the trial court's ruling is unclear, the appellant should seek articulation pursuant to Practice Book § [66-5]. . . . [W]e will, in the absence of a motion for articulation, assume that the

---

[26] The defendant does not address this issue in its appellate brief.

trial court acted properly." (Internal quotation marks omitted.) *Berglass* v. *Berglass*, 71 Conn. App. 771, 789, 804 A.2d 889 (2002). Furthermore, in light of our disposition on the plaintiff's principal claim, the plaintiff will have the opportunity to present his argument to the trial court on remand.

In AC 28309, the judgment is affirmed. In AC 29468, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.