******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PETER FEATHERSTON *v.* KATCHKO &
SON CONSTRUCTION SERVICES,
INC., ET AL.
(AC 42280)

Moll, Alexander and Suarez, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants, S Co. and P
Co., for violations of the Connecticut Uniform Fraudulent Transfer Act
(CUFTA) (§ 52-552a et seq.) and the Connecticut Unfair Trade Practices
Act (CUTPA) (§ 42-110a et seq.). In 2012, the trial court rendered judg-
ment for the plaintiff against S Co. in a separate action. Soon after the
2012 judgment, S Co. ceased doing business, and the former president
of S Co. filed a certificate of incorporation forming P Co. The plaintiff
alleged that S Co. had fraudulently transferred all of its assets to P Co.
in order to prevent him from collecting on the 2012 judgment. The
plaintiff requested punitive damages under CUTPA in his second revised
complaint and in his posttrial brief; the trial court did not address
punitive damages in rendering judgment in favor of the plaintiff on all
counts. The court also awarded the plaintiff attorney's fees on his CUTPA
count. The defendants appealed to this court. After the appeal had been
filed, the plaintiff filed a motion to amend the complaint to conform
the pleadings to the proof adduced at trial and a motion for punitive
damages. The court granted the motion to amend but denied the motion
for punitive damages. The defendants then amended their appeal. *Held*:
1. The defendants' original appeal was not taken from a final judgment,
   and this court lacked subject matter jurisdiction to entertain it, but,
   nonetheless, the defendants' amended appeal was jurisdictionally
   proper; a final judgment was not rendered in this matter until the trial
   court had denied the plaintiff's motion for punitive damages, following
   the original appeal, and the defendants' amended appeal encompassed
   the claims raised by the defendants in their original appeal, in addition
   to the granting of the plaintiff's postjudgment motion to amend, and
   this court could review all of the defendants' claims in the context of
   their amended appeal.
2. The trial court abused its discretion in granting the plaintiff's motion
   to amend the complaint following judgment: no special circumstances
   existed to warrant the amended complaint, in which the plaintiff improp-
   erly asserted successor liability as a stand-alone claim, after the court
   had rendered judgment; moreover, by granting the motion to amend,
   the court enabled the plaintiff to present a claim after judgment that,
   standing alone, was not legally cognizable, as successor liability is a
   theory of liability to be alleged in support of a claim rather than raised
   as an independent claim.
3. The trial court did not err in determining that the defendants had vio-
   lated CUFTA:
   a. The trial court properly found that there had been a transfer of assets
   between S Co. and P Co., the record having supported the court's finding,
   by clear and convincing evidence, that S Co. transferred assets, specifi-
   cally two excavators, to P Co., but those were the only assets shown
   by the plaintiff to have been transferred, and a finding that any other
   assets were transferred by S Co. to P Co. would be based on assumption
   and speculation.
   b. The trial court properly determined that the defendants were liable
   under § 52-552e (a) (1) of CUFTA, in that the plaintiff produced sufficient
   evidence of S Co. having transferred assets to P Co. with an actual
   intent to hinder, delay, or defraud the plaintiff; in determining that the
   defendants had violated § 52-552e (a) (1), the court found that the trans-
   fer between S Co. and P Co. met a number of the indicia of fraud set
   forth in § 52-552e (b), including that S Co. had been sued and the 2012
   judgment was rendered before the transfer had been made, S Co., which
   the court found had ceased its business shortly following the 2012
   judgment, was insolvent or became insolvent shortly following the trans-

fer, and the formation of P Co. following the rendering of the 2012 judgment increased the difficulty facing the plaintiff in his efforts to collect on the judgment.

c. The trial court improperly determined that the defendants were liable under § 52-552f (a) of CUFTA, as the plaintiff did not produce sufficient evidence that S Co. was insolvent at the time of the transfer or became insolvent as a result thereof; although there was evidence in the record demonstrating that S Co. became insolvent by the end of 2012, sometime following the transfer, there was no evidence reflecting the date of the transfer, thus, it could not be determined whether S Co. was insolvent at the time of the transfer, and there was insufficient evidence to make a finding as to whether the transfer of the excavators, itself, resulted in S Co. becoming insolvent.

d. The trial court erred in encompassing any other property, besides two excavators, within its order of relief under CUFTA, as the order was overbroad in authorizing the attachment of property that was not subject to the action: the two excavators, which remain in the possession of P Co., were the only assets that were properly found, on the record, to have been fraudulently transferred from S Co. to P Co.; moreover, there was no error in the court's ordering that the plaintiff may attach the two excavators in the sum of the 2012 judgment, plus interest, and that the defendants were enjoined from transferring those excavators; furthermore, the defendants' claim that the court's relief under CUFTA was improper because the court failed to determine the value of the assets transferred pursuant to statute (§ 52-552i) was unavailing, as the court did not award damages under CUFTA, only a monetary sum in the form of attorney's fees under CUTPA, which had no bearing on the relief afforded under CUFTA, and the defendants' reliance on § 52-552i (b), which grants a trial court the discretion to award, as damages against the appropriate party, the lesser of the value of the asset transferred and the amount necessary to satisfy the creditor's claim, was misplaced.

4. The defendants' claim that the trial court erred in rendering judgment in favor of the plaintiff on the count of his complaint sounding in a violation of CUTPA was unavailing; the crux of the defendants' contention was that the success of the plaintiff's CUTPA claim was predicated on the court's finding that the defendants had committed a fraudulent transfer under CUFTA, and, as the court properly determined that that the defendants had engaged in a fraudulent transfer in violation of § 52-552e (a) (1), the defendants' claim failed.

Argued September 14—officially released December 22, 2020

*Procedural History*

Action to recover damages for, inter alia, the defendants' alleged fraudulent transfer of assets, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk where the matter was tried to the court, *Hon. Taggart D. Adams*, judge trial referee; judgment for the plaintiff, from which the defendants appealed to this court; thereafter, the court, *Hon. Taggart D. Adams*, judge trial referee, granted the plaintiff's motion to amend the complaint and denied the plaintiff's motion for an order of punitive damages, and the defendants amended their appeal. *Appeal dismissed in part*; *reversed in part*; *judgment directed.*

*David W. Rubin*, with whom was *Jonathan D. Jacobson*, for the appellants (defendants).

*Brenden P. Leydon*, with whom, on the brief, was *Mark Sank*, for the appellee (plaintiff).

*Opinion*

MOLL, J. The defendants, Katchko & Son Construction Services, Inc. (Son Singular), and Katchko & Sons Construction Services, Inc. (Sons Plural),[1] appeal from the judgment of the trial court rendered in favor of the plaintiff, Peter Featherston. On appeal, the defendants claim that the court (1) abused its discretion in granting the plaintiff's motion to amend his second revised complaint, (2) improperly rendered judgment in favor of the plaintiff on counts one and two of his second revised complaint sounding in violations of the Connecticut Uniform Fraudulent Transfer Act (CUFTA), General Statutes § 52-552a et seq., and (3) improperly rendered judgment in favor of the plaintiff on count three of his second revised complaint sounding in a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[2] We dismiss, sua sponte, the defendants' original appeal for lack of a final judgment; see part I of this opinion; and, with respect to the amended appeal, we affirm in part and reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. In 2006, the plaintiff commenced a civil action against, among other parties, Katchko Construction Services, Inc., raising claims sounding in, inter alia, breach of contract. See *Featherston* v. *Tautel & Sons Consulting, LLC*, Superior Court, judicial district of Fairfield, Docket No. CV-06-5002924-S (2006 action). On February 7, 2011, while the 2006 action was pending, Robert Katchko, the president of Katchko Construction Services, Inc., filed a certificate of amendment with the Secretary of the State changing the name of Katchko Construction Services, Inc., to Son Singular. On April 17, 2012, the trial court, *Tyma, J.*, rendered judgment in favor of the plaintiff on his breach of contract claim against Son Singular[3] in the amount of $216,972.83 (2012 judgment). Son Singular appealed from the 2012 judgment, but the appeal was dismissed on December 12, 2012.

Less than three months after the judgment, on July 1, 2012, Son Singular ceased doing business. On August 6, 2012, a certificate of incorporation was filed with the Secretary of the State forming Sons Plural. On January 27, 2014, Robert Katchko filed a certification of dissolution with the Secretary of the State dissolving Son Singular.

On August 22, 2016, the plaintiff commenced the present action against the defendants. On April 24, 2017, the plaintiff filed a second revised three count complaint. Count one asserted a fraudulent transfer claim under CUFTA, specifically, General Statutes § 52-552e. Count two also asserted a fraudulent transfer claim under CUFTA, specifically, General Statutes § 52-552f. Count three asserted a violation of CUTPA. The crux of the

plaintiff's allegations was that Son Singular had transferred all of its assets to Sons Plural in order to prevent the plaintiff from collecting on the 2012 judgment. On January 23, 2018, the defendants filed an answer denying the material allegations of the second revised complaint.

The matter was tried to the court, *Hon. Taggart D. Adams*, judge trial referee, on January 24 and 25, 2018. During his case-in-chief, the plaintiff introduced several exhibits and elicited testimony from Anthony Branca, an accountant who had performed tax preparation services for the defendants. The plaintiff also testified. On January 25, 2018, after the plaintiff had rested, the defendants orally moved for a judgment of dismissal for failure to make out a prima facie case pursuant to Practice Book § 15-8.[4] The court reserved its decision on the motion to dismiss until the parties had an opportunity to file memoranda on the motion. On June 11, 2018, after the parties had submitted their respective memoranda, the court issued a memorandum of decision denying the motion to dismiss, concluding that the plaintiff had established a prima facie case for his fraudulent transfer and CUTPA claims. On July 17, 2018, the parties appeared before the court, and the defendants' counsel represented that the defendants had elected to rest without putting on evidence.

On November 8, 2018, after the parties had submitted their respective posttrial briefs,[5] the court issued a memorandum of decision rendering judgment in favor of the plaintiff on all three counts of his second revised complaint. As to the defendants' violation of CUFTA, the court ordered relief pursuant to General Statutes § 52-552h, including permitting the plaintiff to attach property of the defendants in the amount of the 2012 judgment, plus interest. As relief for the defendants' violation of CUTPA, the court awarded the plaintiff $18,388 in attorney's fees under CUTPA. On November 14, 2018, the defendants filed their original appeal challenging the November 8, 2018 judgment and the denial of their motion to dismiss.[6]

On November 28, 2018, the plaintiff filed a motion to amend his second revised complaint, with an accompanying proposed amended complaint filed the same day, to conform the pleadings to the proof adduced at trial (motion to amend). The proposed amended complaint set forth, as a new fourth count, a purported standalone claim for successor liability, and added into the prayer for relief a request for a finding of successor liability. The complaint otherwise was identical to the second revised complaint. On December 27, 2018, the defendants objected to the motion to amend. On January 11, 2019, the plaintiff filed a reply brief. On January 14, 2019, the court granted the motion to amend and overruled the defendants' objection. Thereafter, no motion was filed, and no action was taken by the court,

directed to the November 8, 2018 judgment. On January 24, 2019, the defendants filed an amended appeal to encompass the court's granting of the motion to amend. Additional facts and procedural history will be set forth as necessary.

I

As a preliminary matter, we address, sua sponte, whether the defendants' original appeal filed on November 14, 2018, was taken from a final judgment.[7] "The jurisdiction of the appellate courts is restricted to appeals from judgments that are final. . . . The policy concerns underlying the final judgment rule are to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level. . . . The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear. . . . We therefore must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." (Citations omitted; internal quotation marks omitted.) *Wolfork* v. *Yale Medical Group*, 335 Conn. 448, 459, 239 A.3d 272 (2020). We conclude that the original appeal was not taken from a final judgment, and, therefore, we lack subject matter jurisdiction to entertain it. We nonetheless conclude that the defendants' amended appeal, filed on January 24, 2019, is jurisdictionally proper and encompasses all of their claims on appeal.

Our jurisdictional analysis is governed by *Perkins* v. *Colonial Cemeteries, Inc.*, 53 Conn. App. 646, 734 A.2d 1010 (1999). In *Perkins*, this court dismissed, for lack of a final judgment, an appeal challenging the denials of the defendants' postverdict motions because, although the defendants had been found liable under CUTPA by a jury, the trial court had not yet ruled on the plaintiff's request for punitive damages under CUTPA. Id., 649; see also *Hylton* v. *Gunter*, 313 Conn. 472, 487 n.15, 97 A.3d 970 (2014) (citing *Perkins* in explaining that "statutory punitive damage awards, which in many cases may be awarded in addition to attorney's fees and costs . . . present unique final judgment considerations" (citation omitted)).

In the present case, the plaintiff requested punitive damages under CUTPA[8] in his second revised complaint and in his posttrial brief.[9] In rendering judgment in favor of the plaintiff on his CUTPA claim, the court made no mention of punitive damages; instead, the court awarded the plaintiff $18,338 in attorney's fees upon its determination that the attorney's fees requested were reasonable and compensable under CUTPA.[10] On November 29, 2018, after the defendants had filed their original appeal, the plaintiff filed a motion requesting that the court award punitive damages, which the court summarily denied on January 14, 2019.[11]

Under *Perkins*, a final judgment was not rendered in this matter until January 14, 2019, when the court denied the plaintiff's motion for punitive damages. Therefore, the defendants' original appeal, filed on November 14, 2018, was not taken from a final judgment, and we dismiss, sua sponte, the original appeal for lack of a final judgment.

Notwithstanding the jurisdictional defect in the defendants' original appeal, the defendants' amended appeal, filed on January 24, 2019, is jurisdictionally proper. See Practice Book § 61-9 ("[i]f the original appeal is dismissed for lack of jurisdiction, the amended appeal shall remain pending if it was filed from a judgment or order from which an original appeal properly could have been filed"). The amended appeal encompasses the claims raised by the defendants in their original appeal, in addition to the granting of the plaintiff's motion to amend. Accordingly, we may review all of the defendants' claims in the context of their amended appeal. See, e.g., *Randazzo* v. *Sakon*, 181 Conn. App. 80, 87 n.7, 189 A.3d 616 (dismissing original appeal for lack of final judgment but reviewing claims under amended appeal pursuant to § 61-9), cert. denied, 330 Conn. 909, 193 A.3d 560 (2018); *Rosa* v. *Lawrence & Memorial Hospital*, 145 Conn. App. 275, 282 n.9, 74 A.3d 534 (2013) (same); *Midland Funding, LLC* v. *Tripp*, 134 Conn. App. 195, 196 n.1, 38 A.3d 221 (2012) (same).

II

Turning to the defendants' claims on appeal, we first address the defendants' assertion that the trial court abused its discretion in granting the plaintiff's motion to amend. For the reasons that follow, we agree.

"Our standard of review . . . is well settled. While our courts have been liberal in permitting amendments . . . this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. This court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion." (Internal quotation marks omitted.) *Burton* v. *Stamford*, 115 Conn. App. 47, 57, 971 A.2d 739, cert. denied, 293 Conn. 912, 978 A.2d 1108 (2009). "It is the [burden of the party challenging the court's ruling] to demonstrate that the trial court clearly abused its discretion." (Internal quotation marks omitted.) *Berlin Batting Cages, Inc.* v. *Planning & Zoning Commission*, 76 Conn. App. 199, 211, 821 A.2d 269

(2003).

The following additional facts and procedural history are relevant to our disposition of this claim. In his second revised complaint, in support of his claims sounding in violations of CUFTA and CUTPA, the plaintiff alleged in relevant part that (1) the 2012 judgment had been rendered in his favor and against Son Singular,[12] (2) Robert Katchko formed Sons Plural on or about August 6, 2012, and (3) Son Singular transferred all of its assets to Sons Plural. The plaintiff did not expressly allege that Sons Plural was liable to him for any claim under a theory of successor liability. In his posttrial brief, the plaintiff asserted that he was entitled to an award of damages against Sons Plural under a theory of successor liability, contending that (1) Robert Katchko was the principal of both Son Singular and Sons Plural, and (2) the cessation of Son Singular's business in July, 2012, and the formation of Sons Plural in August, 2012, were carried out with an intent to deprive him of his ability to collect on the 2012 judgment.

The trial court did not render judgment in the plaintiff's favor on any claim predicated upon a theory of successor liability; however, it found that the plaintiff had "shown . . . that a Katchko entity [Sons Plural] was operating [certain] equipment in 2016 while the Katchko entity that operated the equipment in 2012 and against which [the plaintiff] obtained a six figure civil court judgment [Son Singular] was without assets and closed." Additionally, in denying the defendants' motion to dismiss, on which the court relied in rendering judgment in the plaintiff's favor, the court found that the plaintiff had "submitted evidence of his judgment against [Son Singular] in 2012, the subsequent cessation of that entity in the middle of 2012, and the creation of a new corporate entity, [Sons Plural], in August, 2012, just days after the [2012] judgment was entered, that apparently took over the business in full and left the prior company closed and without assets."

On November 26, 2018, after the defendants had filed their original appeal, they filed with this court a preliminary statement of the issues in compliance with Practice Book § 63-4 (a) (1), raising, inter alia, the following issue: "Did the trial court err in finding, in essence, successor liability, when such a claim was neither plead nor tried before the trial court?"

Two days later, the plaintiff filed the motion to amend "to more specifically call for successor liability so as to conform the pleadings to the proof as found by the court." The plaintiff asserted that the evidence in the record and the findings made by the court demonstrated that Sons Plural "was a mere continuation of [Son Singular] and that the transaction was fraudulent." The plaintiff further asserted that the defendants were not prejudiced by the motion to amend as the proposed amended complaint did "not add a single new factual allegation

and merely more clearly [set] forth a claim for successor liability, which has already been properly found by the court." Additionally, the plaintiff contended that successor liability was an appropriate remedy under CUTPA. Finally, the plaintiff stated that, "[a]lthough the [second revised complaint] and the proof at trial are likely sufficient anyway, out of an abundance of caution the plaintiff is seeking to amend to more clearly set this forth so the case can fairly be reviewed on its merits rather than allow the defendants to continue to evade justice on procedural technicalities." The court, over the defendants' objection, granted the motion to amend.

In articulating its decision granting the plaintiff's motion to amend,[13] the court explained that, "[a]lthough not stated in those terms, the question of successor liability has been at issue in this controversy at least since the defendant's[14] decision to form a new corporation and change its name shortly after the [2012 judgment]. . . . Previously, in 2011, [Katchko Construction Services, Inc.] had changed its name by simply filing an amendment with the Secretary of the State. . . .

"The evidence at trial included very persuasive testimonial evidence by the plaintiff that [certain] equipment at [Sons Plural's] place of business in late 2016 was the same equipment he saw working at a residence he was building in 2005 (work that gave rise to the [2012 judgment]). There was also unrebutted evidence by [Branca] who prepared tax returns for [Son Singular] showing that [Son Singular] was 'closed' or dissolved as of July 1, 2012, and the company's equipment was transferred to some other entity at no gain or loss to [Robert] Katchko or his business. Therefore, the Katchko business entities have a history of transferring valuable assets from one to another, and this court has already determined that the defendants have violated the fraudulent transfer statutes. . . . With this background the court determined that the proposed amendment relating to successor liability was undoubtedly somewhat late, but was not unfairly prejudicial to the defendants, and did not simply appear out of thin air.

"In that connection the court notes that the defendants have declined to present evidence on their own behalf, and in their motion for articulation have pointed to no evidence that they have been prevented from offering. The court also finds the defendants' contention that the amended complaint 'introduces an entirely new measure of damages' against them is completely unsupported by any legal or factual argument." (Citations omitted; footnote added.)

The defendants claim that the court abused its discretion by permitting the plaintiff to amend his complaint after the court had issued its November 8, 2018 memorandum of decision rendering judgment in his favor. More specifically, the defendants contend that the court permitted the amendment without identifying any spe-

cial circumstances warranting the amendment following the rendering of the November 8, 2018 judgment. For the reasons that follow, we conclude that the court abused its discretion in permitting the amendment.[15]

It is well established that a "trial court may permit an amendment to pleadings at any time"; *Maloney* v. *PCRE, LLC*, 68 Conn. App. 727, 753, 793 A.2d 1118 (2002); including, under special circumstances, after a judgment is rendered. In *Burton* v. *Stamford*, supra, 115 Conn. App. 47, immediately after the trial court had granted the defendant's oral motion for a directed verdict on the ground of governmental immunity, the plaintiff made an oral motion to amend his complaint, which the court denied. Id., 52. Thereafter, the plaintiff filed a motion to set aside the directed verdict on the ground that the court had improperly denied his motion to amend. Id. The court agreed that the motion to amend should have been granted, whereupon it set aside the verdict and ordered a new trial. Id., 52–53. The defendant appealed from that judgment,[16] contending, initially, that it was impermissible to file a motion to amend a pleading after the granting of a directed verdict. Id., 58. This court rejected that proposition, citing, inter alia, precedent from our Supreme Court providing that "an amendment after a verdict has entered may be allowed under special circumstances, but it will not be in ordinary cases and that such determination is . . . a matter of discretion . . . ." (Internal quotation marks omitted.) Id., 59, quoting *McAlister* v. *Clark*, 33 Conn. 253, 257 (1866). Relying on *McAlister* and other appellate case law, this court determined "that the [trial] court is not prohibited from granting a motion to amend after judgment is rendered. Rather, the court must determine whether the particular circumstances mandate such exercise of its discretion." *Burton* v. *Stamford*, supra, 59. Turning then to the merits of the defendant's claim, this court concluded, upon review of the record and the arguments of the parties, that the trial court did not abuse its discretion in permitting the amendment.[17] Id., 61–62; see id. (affirming granting of postverdict motion to amend when, although plaintiff's counsel had been negligent in belatedly requesting amendment, there was no substantial delay, defendant was not prejudiced, and court's initial denial of motion to amend had "turned a plaintiff claiming serious injuries out of court without a decision on the merits of his claim" (internal quotation marks omitted)).

We construe *Burton* as demonstrating that, in exercising their discretion with regard to motions to amend pleadings filed after a judgment has been rendered, trial courts must recognize that such amendments should be permitted sparingly and only when special circumstances exist to warrant them. See *Burton* v. *Stamford*, supra, 115 Conn. App. 61–62; see also *Ideal Financing Assn.* v. *LaBonte*, 120 Conn. 190, 195–96, 180 A. 300 (1935) (reversing denial of motions to open judgment

and for permission to file amended answer when defendant sought to raise special defense that would have resulted in complete defense to action); *Betts* v. *Hoyt*, 13 Conn. 469, 471 (1840) (advising Superior Court to deny plaintiff's motion to amend declaration filed following court's granting of defendant's motion for arrest of judgment, but observing that amendment would have been permissible if plaintiff had set forth facts in motion demonstrating that he would suffer "serious and irretrievable loss" from refusal of amendment, such as loss of debt by operation of statute of limitations or discharge of lien created by attachment).

Here, in granting the plaintiff's motion to amend, the trial court determined that, although the motion was untimely, the issue of successor liability had been in controversy since before the inception of the present case and the defendants were not prejudiced by the amendment. Nothing in the record or in the court's articulation, however, reflects any special circumstances that justified the untimely amendment. Moreover, by granting the motion to amend, the court enabled the plaintiff to present a claim after judgment that, standing alone, is not legally cognizable. In the plaintiff's amended complaint, the plaintiff added a fourth count incorporating therein allegations set forth in the preceding third count and further alleging that Sons Plural was liable for the debt of Son Singular under a theory of successor liability. As the plaintiff acknowledged in his appellate brief, however, our Supreme Court has stated that "successor liability does not create a new cause of action against the [successor] so much as it *transfers* the liability of the predecessor to the [successor]." (Emphasis in original; internal quotation marks omitted.) *Robbins* v. *Physicians for Women's Health, LLC*, 311 Conn. 707, 716, 90 A.3d 925 (2014), quoting *In re Fairchild Aircraft Corp.*, 184 B.R. 910, 920 (Bankr. W.D. Tex. 1995), vacated on other grounds, 220 B.R. 909 (Bankr. W.D. Tex. 1998). Successor liability is a theory of liability to be alleged in support of a claim rather than raised as an independent claim, and, therefore, it was improper for the plaintiff to plead successor liability as a stand-alone count in the amended complaint.

We are mindful that it is rare for this court to disturb a trial court's exercise of its discretion in determining whether to permit an amendment. See *Watson Real Estate, LLC* v. *Woodland Ridge, LLC*, 187 Conn. App. 282, 300, 202 A.3d 1033 (2019) ("[o]n rare occasions, this court has found an abuse of discretion by the trial court in determining whether an amendment should be permitted" (internal quotation marks omitted)). Nevertheless, our precedent instructs that amendments following the rendering of a judgment should be granted only when special circumstances justify them. In the present case, no special circumstances existed to warrant the amended complaint, in which the plaintiff

improperly asserted successor liability as a stand-alone claim, after the court had rendered the November 8, 2018 judgment.[18] Accordingly, we conclude that the trial court abused its discretion in granting the plaintiff's motion to amend.[19]

## III

We next consider the defendants' claims that the trial court improperly rendered judgment in favor of the plaintiff on counts one and two of his second revised complaint sounding in violations of CUFTA.[20] More specifically, the defendants assert that the court (1) incorrectly determined that the plaintiff met his burden to demonstrate that the defendants had committed a fraudulent transfer under §§ 52-552e (a) (1) and 52-552f (a), and (2) committed error in awarding relief to the plaintiff under CUFTA. We address each of these arguments in turn.

## A

The defendants claim that the court erred in determining that the plaintiff established that they had committed a fraudulent transfer under §§ 52-552e (a) (1) and 52-552f (a). We conclude that the court properly determined that the defendants were liable under § 52-552e (a) (1) and improperly determined that they were liable pursuant to § 52-552f (a).

We begin by setting forth the following standard of review and legal principles governing our review of the defendants' claims. "The determination of whether a fraudulent transfer took place is a question of fact and it is axiomatic that [t]he trial court's [factual] findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . The elements of fraudulent conveyance, including whether the defendants acted with fraudulent intent, must be proven by clear, precise and unequivocal evidence." (Citation omitted; internal quotation marks omitted.) *Certain Underwriters at Lloyd's, London* v. *Cooperman*, 289 Conn. 383, 395, 957 A.2d 836 (2008). This standard, also referred to as the "clear and convincing" standard, "is met if the evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. . . . Put another way, the clear and convincing standard should operate as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal

or contradictory." (Citation omitted; internal quotation marks omitted.) *Thurlow* v. *Hulten*, Superior Court, judicial district of Hartford, Docket No. X04-CV-05-4059315-S (October 15, 2004) (reprinted at 173 Conn. App. 698, 718, 164 A.3d 858 (2017)), aff'd, 173 Conn. App. 694, 164 A.3d 858 (2017).

"To establish that a transfer is fraudulent, the creditor may, but need not, prove actual fraudulent intent. See General Statutes § 52-552e (a) (1) and (b) . . . . Liability also can be established on the basis of constructive fraud when a transfer of the debtor's assets occurs after the creditor's claim arose and other circumstances are present, including that the debtor has not received reasonably equivalent value in exchange for the transfer, that the transfer renders the debtor insolvent (i.e., greater debts than assets), and/or that the transfer is made to an insider, such as the debtor's relative. See General Statutes § 52-552e (a) (2); General Statutes § 52-552f (a) and (b) . . . ." (Footnotes omitted; internal quotation marks omitted.) *Geriatrics, Inc.* v. *McGee*, 332 Conn. 1, 11–12, 208 A.3d 1197 (2019).

The following additional facts are relevant to our resolution of the defendants' claims. In rendering judgment in the plaintiff's favor, the court relied on the findings set forth in its decision denying the defendants' motion to dismiss. In that decision, the court made the following relevant findings. "[The plaintiff] testified [at trial] in a very credible fashion. [The 2012] judgment against Son [Singular] arose out of excavation work performed by [Son Singular] . . . in connection with the construction of a single family residence for investment purposes on property owned by [the plaintiff] in Fairfield . . . in 2005. During that project, [the plaintiff] visited the site a number of times, sometimes in the company of his young sons, and had a clear recollection of the construction equipment [Son Singular] had on that site in 2005, which included a very large excavator. Specifically, [Son Singular] used two excavators while working on the foundation and septic system for the residence, one larger, one smaller, and some additional trucks. [The plaintiff] testified he was at the site . . . several times a week and at least one of his sons climbed on the . . . equipment during one or more of these visits.

"Subsequently, on November 12 and 13, 2016, [the plaintiff] drove by [Sons Plural's] business headquarters in Stamford . . . and testified at trial in response to an inquiry by the court that he was 'absolutely sure' that the large and small excavators at that location were the same equipment [Son Singular] used on his property in 2005. . . . He testified on direct examination that the very large excavator 'was the exact same as far as I could tell it was the exact same machine. It had the paint, it had the scratches, it had, you know, it had all the same—the same look and feel as the one we were—

we were next to and riding in consistently.' . . . The essence of this testimony was repeated on cross-examination. In response to questions by [the defendants'] attorney, [the plaintiff] testified that one piece of equipment used in 2005, 'was the one with the extended long arm that is used for big digs, where you have to go further out and it isn't just a regular little dump—you know excavator. So that one is very vivid and clear. The other was very vivid and clear because [Son Singular] used it on the septic system.' . . . When asked what equipment he had a recollection of his son riding that provides a 'special memory' of the equipment, [the plaintiff] said, 'yes one was an excavator and one was the extended large excavator.' . . .

"[The plaintiff] continued: 'But all I know is that the equipment that [Son Singular] used on my property [in 2005] is the same equipment that [Sons Plural] was using when I went to [its] place of business in [2016], and I witnessed the same equipment. Matter of fact . . . it's not only the same equipment, it's the same writing on the equipment because I'm in the publishing business, and I was at that time, and have been for many, many years. . . . So to make it shorter, it was when I went [to Sons Plural's place of business] in 2016, I noticed the same thing I noticed back when [Son Singular] was working on my property [in 2005], with the exact same equipment. The fonts on the actual machines that were written in the back in—in yellow type on this big green background that says Katchko were in different fonts on different equipment. And I remember noticing at that time saying, geesh, [Robert Katchko] didn't even use the right font consistently on his product, on his—the branding. And I just thought that was odd that one would be more Helvetica and one would be more of an Arial, Courier look . . . but that's kind of one of the memories that came back about the equipment in particular." (Citations omitted.)

The court further found in relevant part: "Branca, a certified public accountant . . . performed accounting services, including tax return preparation, for [Son Singular] and related or successor entities up to 2013. . . . [Plaintiff's trial] [e]xhibit 5 is a copy of the 2012 federal income tax return prepared by Branca's firm for [Son Singular], an S corporation. . . . Branca . . . testified that the amount of gross sales or receipts reported on [e]xhibit 5—$511,696—only represented sales or receipts for the first half of 2012 . . . . This is confirmed by the fact that gross receipts for the full year 2011, were $1,329,971. . . . Branca also testified from the [Son Singular] records that various pieces of its equipment were transferred to 'somebody or some other entity' during 2012, at 'book value,' i.e., 'no gain, no loss.' . . . The 2012 federal income tax return for [Son Singular], Form 4562, 'Depreciation and Amortization Report,' contains an entry for 'heavy equipment' put in service in the year 2000, with a cost of $311,585

and fully depreciated by the year 2012. . . . All of the equipment [was] transferred out of [Son Singular] as set forth above for no gain or loss. Furthermore there was no gain or loss to Robert Katchko personally, on his schedule K-1." (Citations omitted.) The court also found, on the basis of evidence in the record, that Son Singular was " 'closed' " on July 1, 2012, and that Sons Plural was formed on August 6, 2012.

The court then concluded that the plaintiff had submitted sufficient evidence to support a prima facie claim that the defendants had violated CUFTA. Specifically, the court determined that "[the plaintiff] has submitted evidence of his judgment against [Son Singular] in 2012, the subsequent cessation of that entity in the middle of 2012, and the creation of a new corporate entity, [Sons Plural], in August, 2012, just days after the [2012] judgment was entered, that apparently took over the business in full and left the prior company closed and without assets. This transfer meets many of the indicia of an intent to defraud set forth in [§ 52-552e (b)] and all of the indicia of a fraudulent transfer set forth in § [52-552f (a)]. Specifically, § 52-552e (b) articulates a minimum of eleven factors to consider in determining whether there was actual intent to defraud and the record in this case arguably supports a finding by clear and convincing evidence that at least seven or eight of these factors pointing toward a fraudulent intent exist, i.e., § 52-552e (b) (1) through (4), (5), (7), (9), and (10).

"It is worth noting in this regard that in 2011, before [the 2012 judgment], [Robert] Katchko simply filed an amendment to the corporate name [of Katchko Construction Services, Inc.] changing it to [Son Singular]. However, after the judgment was entered, an entirely new corporate entity was created—[Sons Plural]—a circumstance that increased the difficulty facing [the plaintiff] in efforts to collect on the [2012] judgment.

"With respect to liability under § 52-552f (a), [Son Singular] transferred assets to [Sons Plural] after [the plaintiff's] claim arose. [Son Singular] received no equivalent value in return, and without any assets, simply ceased doing business thereafter."

In its subsequent memorandum of decision rendering judgment in the plaintiff's favor, the court stated in relevant part that, in denying the defendants' motion to dismiss, it had "found that [the plaintiff] testified 'in a very credible fashion,' and specifically quoted [the plaintiff's] testimony to point out how specific it was in describing the defendants' construction equipment, which is the subject of this case and the circumstances that allowed that testimony to be so specific. [The] court concluded that [the plaintiff's] testimony and other evidence supported the court's finding that his claim was proven by 'clear, precise and unequivocal evidence.'

"The defendants' [posttrial brief] . . . argued that [the] plaintiff failed to carry his burden of proving there was not reasonable value given for the assets transferred. This is a particularly weak argument. In this case the plaintiff proved that there was no value given by [Sons Plural] because [Son Singular] was left without assets, and the business was closed . . . . The fact that [the plaintiff] could not definitively give a value to the transferred equipment is of no moment. He did give evidence that equipment he saw on the construction site where his almost $217,000 judgment against [Son Singular] arose in 2012, was the same as he saw at the [Sons Plural] facility in Stamford in 2016. This evidence was persuasive, and no contradictory evidence was offered. Thus, [the plaintiff] has shown, as found by this court, that a Katchko entity, [Sons Plural], was operating the equipment in 2016, while the Katchko entity that operated the equipment in 2012, and against which [the plaintiff] obtained a six figure civil court judgment, [Son Singular], was without assets and closed. . . .

"[I]n the absence of any countervailing evidence since [the denial of the defendants' motion to dismiss], the court finds that the defendants have violated . . . §§ 52-552e and [52-552f]."

The defendants assert that the court improperly found that they had committed a fraudulent transfer under both §§ 52-552e (a) (1) and 52-552f (a). They raise arguments specific to each statute, which we address subsequently in this opinion. Initially, we consider the defendants' contention that the court erred in determining that they had violated both statutes because the court incorrectly found that there was a transfer of assets between Son Singular and Sons Plural. More specifically, they contend that the plaintiff did not introduce clear and convincing evidence of a transfer of any specifically identifiable assets. We are not persuaded.

To establish liability for a fraudulent transfer under either § 52-552e (a) (1) or § 52-552f (a), the plaintiff had the burden of proving that a transfer had been made by Son Singular to Sons Plural after the 2012 judgment had been rendered.[21] See General Statutes §§ 52-552e (a) and 52-552f (a). General Statutes § 52-552b (12) defines the term " '[t]ransfer' " as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance."

The record supports the court's finding, by clear and convincing evidence, that Son Singular transferred assets—specifically, two excavators (subject excavators)—to Sons Plural. First, the plaintiff testified, "very credibl[y]" according to the court, that he saw the sub-

ject excavators in the possession of Son Singular in 2005, and subsequently in the possession of Sons Plural in 2016. Second, 2012 federal tax return documents and 2012 state tax return documents admitted into evidence as plaintiff's exhibits 5 and 6, respectively, reflect, individually or collectively, that (1) at the beginning of 2012, Son Singular owned assets, including "heavy equip[ment]" placed into service in 2000, (2) Son Singular discontinued its business on July 1, 2012, and (3) Son Singular owned no assets by the end of 2012. Branca testified that the 2012 federal tax return documents "[tell] an educated reader that [Son Singular's assets were] transferred at book value" to "[s]omebody or some other entity" in 2012. We conclude that this cumulative evidence, which the defendants elected not to rebut, supports the court's finding that Son Singular transferred the subject excavators to Sons Plural.

We construe the court's memorandum of decision as finding that the subject excavators were the only assets transferred between the defendants, notwithstanding that the plaintiff had alleged in the second revised complaint that "all assets of [Son Singular] were transferred to [Sons Plural]." In awarding the plaintiff relief under CUFTA, the court specifically identified the "subject excavators," among other unspecified property, as being subject to its order of relief. In the event that the court had found that Son Singular had transferred any other assets to Sons Plural, the record would not support such a finding. Our careful review of the record reveals that the subject excavators were the only assets shown by the plaintiff to have been transferred by Son Singular to Sons Plural. On the basis of the evidence in the record, a finding that any other assets were transferred by Son Singular to Sons Plural would be based on assumption and speculation.

1

Having concluded that the court properly found that a transfer of the subject excavators had occurred between Son Singular and Sons Plural, we next address the defendants' contention that the court improperly determined that the plaintiff established, by clear and convincing evidence, that the transfer was fraudulent under § 52-552e (a) (1).[22] Specifically, the defendants assert that the plaintiff did not produce sufficient evidence of Son Singular having transferred any assets to Sons Plural with an actual intent to hinder, delay, or defraud the plaintiff. We are not persuaded.

Section 52-552e (a) provides in relevant part: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor . . . ."

"With respect to finding actual intent as set forth in § 52-552e (a) (1), we have stated that, because fraudulent intent is almost always . . . proven by circumstantial evidence, courts may consider numerous factors in determining whether a transfer was made with actual intent to defraud." (Internal quotation marks omitted.) *McKay* v. *Longman*, 332 Conn. 394, 422, 211 A.3d 20 (2019). Section 52-552e (b) provides that "[i]n determining actual intent under subdivision (1) of subsection (a) of this section, consideration may be given, among other factors, to whether: (1) The transfer or obligation was to an insider, (2) the debtor retained possession or control of the property transferred after the transfer, (3) the transfer or obligation was disclosed or concealed, (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, (5) the transfer was of substantially all the debtor's assets, (6) the debtor absconded, (7) the debtor removed or concealed assets, (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, (10) the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor."

In determining that the defendants had violated § 52-552e (a) (1), the court found that the transfer between Son Singular and Sons Plural met a number of the indicia of fraud set forth in § 52-552e (b), including that Son Singular was sued and the 2012 judgment was rendered before the transfer had been made, and that Son Singular, which the court found had ceased its business shortly following the 2012 judgment, was insolvent or became insolvent shortly following the transfer. The court also found that the formation of Sons Plural following the rendering of the 2012 judgment "increased the difficulty facing [the plaintiff] in efforts to collect on the judgment." These particular findings are supported by the record and are sufficient to uphold the court's determination that the transfer was made with an actual intent to hinder, delay, or defraud the plaintiff.[23] Accordingly, we reject the defendants' claim that the court improperly determined that the plaintiff sustained his burden to demonstrate that the defendants had committed a fraudulent transfer under § 52-552e (a) (1).

2

The defendants also contend that the court improperly determined that the plaintiff established, by clear and convincing evidence, that the defendants had committed a fraudulent transfer under § 52-552f (a). More specifically, the defendants assert that the plaintiff did

not produce sufficient evidence that (1) Son Singular had transferred assets to Sons Plural for a reasonably equivalent value and (2) Son Singular was insolvent at the time of the transfer or became insolvent as a result thereof. We agree with the defendants' latter argument.

Section 52-552f (a) provides: "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."

In determining that the plaintiff satisfied his burden of proof with respect to his § 52-552f (a) claim, the court found that, following the transfer of the subject excavators, Son Singular was left without assets and ceased doing business. Although there is evidence in the record demonstrating that Son Singular became insolvent by the end of 2012, sometime following the transfer, there is no evidence reflecting the date of the transfer. Thus, it cannot be determined whether Son Singular was insolvent at the time of the transfer. Additionally, there is insufficient evidence to make a finding as to whether the transfer of the subject excavators, itself, resulted in Son Singular becoming insolvent. Accordingly, we conclude that the court erred in determining that the defendants had committed a fraudulent transfer in violation of § 52-552f (a).[24]

We pause to note that our conclusion that the court erroneously determined that the defendants had committed a fraudulent transfer in violation of § 52-552f (a) has no bearing on the relief that the court awarded to the plaintiff under CUFTA, which we subsequently address in part III B of this opinion. As we concluded in part III A 1 of this opinion, the court properly found that the defendants had committed a fraudulent transfer in violation of § 52-552e (a) (1). Section 52-552e (a) (1) is a distinct, independent basis for fraudulent transfer liability. See *Geriatrics, Inc.* v. *McGee*, supra, 332 Conn. 33 (*D'Auria, J.*, concurring in part and dissenting in part) (explaining that § 52-552e (a) (1) is one of four distinct bases for fraudulent transfer liability under CUFTA). There is nothing in the record to suggest that the relief awarded by the court under CUFTA was dependent on the plaintiff proving the defendants' liability under both §§ 52-552e (a) (1) and 52-552f (a). Accordingly, the failure of the plaintiff's § 52-552f (a) claim does not affect the relief awarded by the court under CUFTA.

B

We now turn to the defendants' claims that the court committed error in awarding relief to the plaintiff under

CUFTA. More particularly, the defendants contend that the court improperly (1) granted the plaintiff a provisional order of attachment that was vague and overbroad and (2) awarded damages under § 52-552h without finding the value of the assets transferred in accordance with General Statutes § 52-552i (b). We agree, in part, with the defendants.

Our review of the defendants' claim requires us to construe §§ 52-552h and 52-552i (b), as well as the court's order of relief, which present questions of law over which we exercise plenary review. See *Alpha Beta Capital Partners*, *L.P.* v. *Pursuit Investment Management, LLC*, 193 Conn. App. 381, 428, 219 A.3d 801 (2019) ("The interpretation of a trial court's judgment presents a question of law over which our review is plenary. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.)), cert. denied, 334 Conn. 911, 221 A.3d 446 (2020), and cert. denied, 334 Conn. 911, 221 A.3d 446 (2020); *Village Apartments, LLC* v. *Ward*, 169 Conn. App. 653, 664, 152 A.3d 76 (2016) ("[t]he interpretation of a statute, as well as its applicability to a given set of facts and circumstances, presents a question of law over which our review is plenary" (internal quotation marks omitted)), cert. denied, 324 Conn. 918, 154 A.3d 1008 (2017).

At the outset, we discuss the scope of the relief awarded by the court. With regard to CUFTA, the court entered the following order: "Pursuant to . . . § 52-552h, the court orders that [the plaintiff] may, in accordance with the provisions of that statute, seek an attachment in the amount of the [2012 judgment] plus interest at 6 percent per annum against the subject excavators or other equipment of the defendants, and the defendants are hereby enjoined from transferring that equipment or any other construction . . . equipment." With regard to CUTPA, the court awarded the plaintiff $18,388 in attorney's fees, for which the defendants were jointly and severally liable.

The parties' briefs and/or their statements at oral argument suggest that they are under the impression that the court awarded the plaintiff damages in the sum of the 2012 judgment, plus interest. That belief is belied by the record. The relief that the court granted was limited to (1) relief under § 52-552h for the defendants' violation of CUFTA in the form of (a) an attachment of the defendants' property in the sum of the 2012 judgment, plus interest, and (b) an injunction preventing the transfer of the property, and (2) attorney's fees for the defendants' violation of CUTPA. The court did not

afford any other relief to the plaintiff.

1

The defendants contend that the relief awarded to the plaintiff under CUFTA was improper because it was (1) provisional in nature and (2) both vague in failing to identify the specific property it encompassed and overbroad in authorizing the attachment of property that was not subject to this action. We agree with the defendants that the relief awarded was overbroad, but we otherwise reject their assertions.

Our Supreme Court has explained that the policy underlying CUFTA is "protecting unsecured creditors from debtors who place assets beyond the reach of their unsecured creditors . . . ." *Geriatrics, Inc.* v. *McGee*, supra, 332 Conn. 15. Section 52-552h, pursuant to which the court granted the plaintiff relief, sets forth a variety of remedies that a creditor may obtain in a fraudulent transfer action brought under CUFTA. Section 52-552h provides: "(a) In an action for relief against a transfer or obligation under sections 52-552a to 52-552*l*, inclusive, a creditor, subject to the limitations in section 52-552i, may obtain: (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim; (2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by chapter 903a;[25] (3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure (A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property, (B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee, or (C) any other relief the circumstances may require.

"(b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds." (Footnote added.)

The defendants assert that the court's order permitting the plaintiff to attach their property constituted improper "provisional" relief under CUFTA. We disagree with that construction. Although § 52-552h (a) (2) provides that a creditor may obtain an attachment as a provisional remedy, in addition to "other provisional" relief as provided by the statute, § 52-552h (a) (3) (C) enables a trial court to award "any other relief the circumstances may require," and § 52-552h (b) permits a court to allow a creditor who has "obtained a judgment on a claim against the debtor," as the plaintiff had in the present case, to "levy execution on the asset transferred or its proceeds." Read logically, the court's order of relief allows the plaintiff to attach the defendants' property *and* levy execution thereon. Such relief is well within the court's authority to grant under § 52-

552h after finding liability for a fraudulent transfer.

We agree with the defendants, however, insofar as they claim that the relief granted by the court is over-broad because it applies to "other" property beyond the subject excavators, which were the only assets that were properly found, on this record, to have been fraudulently transferred from Son Singular to Sons Plural. Although we recognize that a creditor's remedies under CUFTA are not limited to the assets fraudulently transferred and proceeds derived therefrom; see *Robinson* v. *Coughlin*, 266 Conn. 1, 8–9, 830 A.2d 1114 (2003); there is nothing in the record to support the court's awarding relief to the plaintiff under CUFTA as to property other than the subject excavators, which, on the basis of the record, remain in the possession of Sons Plural.

In sum, we find no error in the court's ordering, pursuant to § 52-552h, that the plaintiff may attach the subject excavators in the sum of the 2012 judgment, plus interest, and that the defendants are enjoined from transferring the subject excavators, but we conclude that the court erred in encompassing any other property within its order of relief under CUFTA.

2

The defendants also contend that the court's order of relief under CUFTA is improper because the court failed to determine the value of the assets transferred pursuant to § 52-552i (b). More particularly, the defendants assert that the court awarded the plaintiff "a measure of damages" under § 52-552h, which obligated the court to make a finding of value in accordance with § 52-552i (b). We disagree.

Section 52-552i (b) provides: "Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under subdivision (1) of subsection (a) of section 52-552h, the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (d) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against: (1) The first transferee of the asset or the person for whose benefit the transfer was made, or (2) any subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee."

By its plain terms, § 52-552i (b) bestows upon a trial court the discretion to award, *as damages* against the appropriate party, the lesser of the value of the asset transferred and the amount necessary to satisfy the creditor's claim. See *Stuart* v. *Stuart*, 112 Conn. App. 160, 179–80, 962 A.2d 842 (2009) ("[u]nder . . . § 52-552i (b), the [trial] court can award the value of the asset transferred *as damages*" (emphasis added; footnote omitted)), rev'd on other grounds, 297 Conn. 26, 996 A.2d 259 (2010). As we explained earlier in this

opinion, the court did not award damages under CUFTA. The only monetary sum awarded by the court was in the form of attorney's fees under CUTPA, which had no bearing on the relief afforded by the court under CUFTA. Accordingly, the defendants' reliance on § 52-552i (b) is misplaced.

## IV

The defendants' remaining claim is that the trial court erred in rendering judgment in favor of the plaintiff on count three of his second revised complaint sounding in a violation of CUTPA. This claim is unavailing.

"CUTPA provides that [n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . . It is well settled that whether a defendant's acts constitute . . . deceptive or unfair trade practices under CUTPA, is a question of fact for the trier, to which, on appellate review, we accord our customary deference." (Citation omitted; internal quotation marks omitted.) *Pedrini* v. *Kiltonic*, 170 Conn. App. 343, 353, 154 A.3d 1037, cert. denied, 325 Conn. 903, 155 A.3d 1270 (2017).

In denying the defendants' motion to dismiss as to the plaintiff's CUTPA claim, the court stated that, "[i]n the third count of his [second revised] complaint, [the plaintiff] allege[s] that the fraudulent transfers alleged in the first two counts of his [second revised] complaint [constitute] violations of [CUTPA] . . . . The court finds the evidence supporting the claims of fraudulent transfer support as well a prima facie case that the defendants also violated CUTPA . . . ." In rendering judgment in favor of the plaintiff on his CUTPA claim, the court stated that it "adheres to its earlier decision that there was prima facie evidence that the defendants violated CUTPA, and in the absence of any countervailing evidence, [the court] finds that the plaintiff has proved that they engaged in 'unfair and deceptive acts or practices in the conduct of any trade or commence.' General Statutes § 42-110b (a)."

The crux of the defendants' contention is that the success of the plaintiff's CUTPA claim was predicated on the court finding that the defendants had committed a fraudulent transfer, and, therefore, the CUTPA claim must fail if we conclude that the court incorrectly determined that the defendants had committed a fraudulent transfer. As we concluded in part III A 1 of this opinion, the court properly determined that the defendants had engaged in a fraudulent transfer in violation of § 52-552e (a) (1). Accordingly, we reject the defendants' assertion that the court committed error in rendering judgment in the plaintiff's favor on his CUTPA claim.

The original appeal is dismissed for lack of a final judgment; as to the amended appeal, the judgment is reversed only with respect to the plaintiff's motion to

amend, the second count of the plaintiff's second revised complaint, and the order of relief entered under § 52-552h insofar as it encompassed property other than the subject excavators, and the case is remanded with direction to deny the plaintiff's motion to amend, to render judgment in favor of the defendants on count two of the plaintiff's second revised complaint, and to vacate the portion of the relief awarded under § 52-552h regarding property other than the subject excavators; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] As the record makes apparent, confusion may arise when discerning Katchko *& Son* Construction Services, Inc., from Katchko *& Sons* Construction Services, Inc. For purposes of clarity, we refer to Katchko *& Son* Construction Services, Inc., as Son Singular, to Katchko *& Sons* Construction Services, Inc., as Sons Plural, and to both corporate entities collectively as the defendants.

[2] In their principal appellate brief, the defendants also claim that the trial court improperly denied a motion filed by them seeking a judgment of dismissal pursuant to Practice Book § 15-8. On March 12, 2020, we ordered the parties to be prepared to address at oral argument " 'the effect, if any, of *Moutinho* v. *500 North Avenue, LLC*, 191 Conn. App. 608, 614, cert. denied, 333 Conn. 928, (2019), on the defendants' claim that the trial court erred in denying their motion to dismiss for failure to make out a prima facie case pursuant to Practice Book § 15-8.' " During oral argument, the defendants' counsel withdrew the claim challenging the denial of the defendants' motion to dismiss.

[3] Katchko Construction Services, Inc., was not a separate and distinct entity from Son Singular; rather, the certificate of amendment filed on February 7, 2011, changed the name of Katchko Construction Services, Inc., to Son Singular. In an effort to avoid confusion, unless otherwise necessary, we hereinafter refer to Son Singular when discussing events that the record attributes to Katchko Construction Services, Inc.

[4] Practice Book § 15-8 provides: "If, on the trial of any issue of fact in a civil matter tried to the court, the plaintiff has produced evidence and rested, a defendant may move for judgment of dismissal, and the judicial authority may grant such motion if the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made."

[5] The defendants filed their posttrial brief on September 14, 2018. The plaintiff filed his posttrial brief on April 19, 2018, which he also utilized as a response to the defendants' motion to dismiss.

[6] The denial of the defendants' motion to dismiss is no longer at issue in this appeal. See footnote 2 of this opinion.

[7] Although the parties have not addressed on appeal whether the defendants' original appeal is subject to dismissal for lack of a final judgment, the parties have briefed the finality of judgment issue in the context of the defendants' claim that the trial court abused its discretion in granting the plaintiff's motion to amend.

[8] General Statutes § 42-110g (a) provides: "Any person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section. *The court may, in its discretion, award punitive damages* and may provide such equitable relief as it deems necessary or proper." (Emphasis added.)

[9] In his posttrial brief, the plaintiff stated that he was "entitled to punitive damages under [CUTPA] at least in the amount of his total attorney's fees. A [h]earing should be scheduled by the court in order to determine the total amount of [the] plaintiff's attorney's fees and costs in order to arrive at punitive damages . . . and attorney's fees . . . ." We do not construe the plaintiff's statements to mean that, if awarded the total amount of attorney's fees requested by him, he was not seeking any additional sum in punitive damages.

[10] General Statutes § 42-110g (d) provides in relevant part: "In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ."

[11] On January 23, 2019, the plaintiff cross appealed from the denial of his motion for punitive damages, but he later withdrew the cross appeal.

[12] The second revised complaint, as well as the amended complaint filed by the plaintiff in conjunction with his motion to amend, alleged that the 2012 judgment was rendered against Sons Plural. As the trial court noted in its order granting the plaintiff's motion to amend, the plaintiff's reference to Sons Plural appears to have been made in error.

[13] On January 24, 2019, the defendants filed a motion requesting that the trial court articulate its decision granting the plaintiff's motion to amend. On February 22, 2019, the court issued an articulation.

[14] We presume that the court was referring to Robert Katchko here as "the defendant."

[15] Additionally, the defendants claim that the court's granting of the plaintiff's motion to amend violated the automatic appellate stay created in connection with their original appeal pursuant to Practice Book § 61-11. As we concluded in part I of this opinion, the defendants' original appeal was not taken from a final judgment. Accordingly, no automatic appellate stay was in effect following the filing of the original appeal. See *Cunniffe* v. *Cunniffe*, 150 Conn. App. 419, 430, 91 A.3d 497 (holding "definitively that no enforceable appellate stay of execution results from the filing of a jurisdictionally infirm appeal"), cert. denied, 314 Conn. 935, 102 A.3d 1112 (2014).

[16] In *Burton*, following the filing of the defendant's appeal, the trial court vacated its order granting a new trial and directed a verdict in the defendant's favor for lack of sufficient evidence. *Burton* v. *Stamford*, supra, 115 Conn. App. 53–54. The plaintiff filed a separate appeal from that judgment, which was consolidated with the defendant's appeal. Id., 54. On appeal, this court held that the defendant's appeal was not moot notwithstanding the court's having vacated its order for a new trial. Id., 56–57.

[17] This court also addressed, and rejected, the defendant's claim that the plaintiff had improperly failed to file a written motion to amend. *Burton* v. *Stamford*, supra, 115 Conn. App. 59–60.

[18] Our determination in part I of this opinion that the November 8, 2018 judgment was not a final judgment until the court had denied the plaintiff's motion for punitive damages does not alter our analysis. The November 8, 2018 judgment adjudicated the defendants' liability under each count raised in the plaintiff's second revised complaint. The finality of the November 8, 2018 judgment for purposes of an appeal has no bearing on that fact.

We also observe that, following the granting of the plaintiff's motion to amend, none of the parties took any action with respect to the amended complaint and no judgment was ever rendered thereon. This further bolsters our determination that no special circumstances were present to justify the granting of the amendment, as, ostensibly, the amendment was not considered to be necessary to vindicate the plaintiff's claims for relief.

[19] Our reversal of the court's decision to grant the motion to amend does not affect the defendants' remaining claims on appeal challenging the judgment rendered on the plaintiff's second revised complaint, as no judgment was ever rendered on the amended complaint.

[20] In his appellate brief, the plaintiff argues that "[a]ny of the remedies ordered by the trial court are properly supported by a finding of successor liability or CUTPA. Thus, if either successor liability or CUTPA [is] affirmed, a further analysis of the technical niceties of the fraudulent conveyance statutes could have no practical effect on the outcome of the appeal." This argument is unavailing because (1) none of the relief awarded by the court was actually predicated on a finding of successor liability and (2) the relief granted by the court under CUTPA was limited to attorney's fees. See part III B of this opinion.

[21] In addition to requiring evidence of a transfer, both §§ 52-552e (a) (1) and 52-552f (a) require proof that a creditor had a claim that arose prior to the transfer. See General Statutes §§ 52-552e (a) and 52-552f (a). The defendants do not raise any cognizable claim on appeal challenging the court's finding that the transfer between Son Singular and Sons Plural occurred after the 2012 judgment had been rendered. Nevertheless, we note that there is uncontroverted evidence in the record demonstrating that Sons Plural was formed on August 6, 2012, several months following the 2012 judgment rendered on April 17, 2012. It necessarily follows that the 2012

judgment debt arose prior to any transfer between Son Singular and Sons Plural.

[22] The defendants also assert that the plaintiff failed to demonstrate that they had committed a fraudulent transfer under § 52-552e (a) (2), which requires a showing that a debtor made a transfer or incurred an obligation "without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." General Statutes § 52-552e (a) (2). Pursuant to § 52-552e, a fraudulent transfer may be established by demonstrating a violation of *either* § 52-552e (a) (1) *or* § 52-552e (a) (2). See General Statutes § 52-552e (a). In the present case, the trial court determined that the defendants had violated § 52-552e (a) (1), but it did not consider whether they had also violated § 52-552e (a) (2). Accordingly, we limit our analysis to the defendants' claim regarding § 52-552e (a) (1).

[23] The defendants do not substantively address each of the factors of fraud identified by the trial court under § 52-552e (b); instead, they thinly claim that there was insufficient evidence to support any of the factors.

[24] To establish a fraudulent transfer under § 52-552f (a), a creditor must demonstrate conjunctively that the debtor did not receive reasonably equivalent value in exchange for the transfer *and* that the debtor was insolvent at the time of the transfer or became insolvent as a result thereof. Because we conclude that the plaintiff did not submit sufficient evidence to demonstrate that Son Singular was insolvent at the time of the transfer or became insolvent as a result thereof, we need not consider whether the plaintiff also met his burden to prove that Son Singular received reasonably equivalent value in exchange for the transfer.

[25] General Statutes § 52-278a et seq.